IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

TERRI MCGUIRE-MOLLICA,

Plaintiff,

v.

RICHARD GRIFFIN, *et al.*,

Defendants.

CIVIL ACTION NO.
7:20-cv-01768-SGC

**SPECIAL REPORT, MOTION TO DISMISS, AND MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's January 28, 2022 Order, ECF No. 13-1, Defendants Richard Griffin, M.D., Xinyu Li, M.D., and Sharon Bailey, R.N., submit this special report, motion to dismiss, and motion for summary judgment[1].

**I.      Special Report**

**A.      Sworn Statements**

The sworn statements of Defendants are attached as exhibits to this special report.

**B.      Individuals with Relevant Knowledge**

1.      Richard Griffin, Physician, FCI Aliceville (Retired);

---

[1] Only defendants Xinyu Li and Sharon Bailey are moving for summary judgment.

2.      Xinyu Li, Physician, FCI Aliceville;

3.      Sharon Bailey, Nurse, FCI Aliceville;

4.      Ted Cox, OB/GYN, Winfield, Alabama;

5.      Lorissa Autery, OB/GYN, Jasper, Alabama.

## C.      Relevant Documents

All documents relevant to the claims and defenses in this action are included as attachments to this special report.

## D.      Affirmative Defenses

Defendants assert and preserve the following affirmative defenses:

1.      Defendants are entitled to qualified immunity.  At no time did Defendants' conduct violate a clearly established constitutional right.

2.      Defendants assert that the statute of limitations bars some of Plaintiff's claims.  Plaintiff's claims are governed by a two-year statute of limitations.  Some of Plaintiff's claims accrued more than two years before she filed this action.  In addition, Defendant Dr. Griffin stopped treating Plaintiff in January 2019, and any claims brought more than two years after that time are barred by the statute of limitations.

## II.      Motion to Dismiss

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, all Defendants move to dismiss Plaintiff's claims because she has failed to exhaust her administrative remedies.

Plaintiff sued Defendants for violations of her constitutional rights pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).  Plaintiff is currently incarcerated, and so her claims are governed by the Prison Litigation Reform Act of 1995.  As a result, before Plaintiff can bring a *Bivens* action, she must fully exhaust the administrative remedies set by the Bureau of Prisons (BOP).  Plaintiff has failed to do this, and her claims are due to be dismissed.

## A.     Legal Standard

Exhaustion of administrative remedies is a matter in abatement and is properly raised in a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008); *see also Abram v. Leu*, 848 F. App'x 868, 870 (11th Cir.).  Deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step inquiry.  *Abram*, 848 F. App'x at 870 (citing *Turner v. Burnside*, 541 F.3d 1077, 1081-82 (11th Cir. 2008).  District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true.  *Id*. "'The court should dismiss if the facts as stated by the prisoner show a failure to exhaust.'"  *Id*.

(quoting *Turner*, 541 F.3d at 1081-82).  Second, if dismissal is not warranted at the first stage, the court should make specific findings to resolve disputes of fact, "'and should dismiss if, based on those findings, defendants have shown a failure to exhaust.'"  *Id*. (quoting *Turner*, 541 F.3d at 1081-82).

**B.     BOP's Administrative Remedy Program**

The BOP provides a multilevel administrative grievance procedure for prisoner complaints.  28 C.F.R. §§ 542.10–542.16.  Initially, prisoners must seek a resolution through informal grievances.  *Id*. § 542.13(a).  If unsuccessful, an inmate may then file a formal written complaint (a BP-9) with the institution.  *Id*. § 543.14.  An appeal may then be taken to the Regional Director (a BP-10).  *Id*. § 542.15(a).  Finally, an inmate may appeal the Regional Director's response to the General Counsel (a BP-11).  *Id*.  Appeals to the General Counsel must be submitted on the form designed for Central Office Appeals.  28 C.F.R. § 542.15(b)(1).  An inmate must appeal through the General Counsel level to exhaust administrative remedies.  *Id.* ("Appeal to the General Counsel is the final administrative appeal."); *Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994).

**C.     Plaintiff Has Not Exhausted Her Administrative Remedies.**

Under Eleventh Circuit precedent, a prisoner's *Bivens* claims are subject to administrative exhaustion requirements.  *Shivers v. United States,* 1 F.4th 924, 935 (11th Cir. 2021) ("The Prison Litigation Reform Act ('PLRA') requires prisoners

to exhaust all available administrative remedies before bringing a *Bivens* claim.")

A plaintiff who has failed to exhaust administrative remedies may face dismissal

on those grounds. *See id.* (affirming the district court's dismissal without prejudice

of the plaintiff's *Bivens* claims for failure to exhaust administrative remedies).

Plaintiff has submitted two administrative remedy requests related to the

medical care at issue in this suit. In administrative remedy request number

1000103, Plaintiff asked to see an outside specialist or surgeon. Ex. A, AR

1000103 at 4; Ex. B, Sentry Report 2. FCI Aliceville responded to her request on

June 23, 2020. Ex. A, AR 1000103 at 6; Ex. B, Sentry Report 4. Plaintiff

appealed her administrative remedy requested to the Regional Office, which

responded on December 21, 2020. Ex. A, AR 1000103 at 2; Ex. B, Sentry Report.

Plaintiff did not appeal the response from the Regional Office to the General

Counsel level. *See* Ex. B, Sentry Report; Ex. C, McPherson Declaration ¶ 8.

In administrative remedy request number 1033708, Plaintiff raised two

medical issues and also requested home confinement. Ex. D, AR 1033708 at 7;

Ex. B, Sentry Report 2. FCI Aliceville responded to her request on July 17, 2020.

Ex. D, AR 1033708 at 6; Ex. B, Sentry Report 4. Plaintiff did not appeal the

response to the Regional Office. *See* Ex. B, Sentry Report; Ex. C, McPherson

Declaration ¶ 9.

Plaintiff has not fully exhausted any of her administrative remedy requests forming the basis of her claims in this action. *See* Ex. B, Sentry Report 2; Ex. C, McPherson Declaration ¶¶ 8-9.[2] Because Plaintiff has not fully exhausted her administrative remedies, her claims are due to be dismissed. *See Shivers*, 1 F.4th at 936 (affirming dismissal of a *Bivens* claims that was not exhausted through the General Counsel level).

### III.   Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Xinyu Li and Sharon Bailey move for judgment as a matter of law on the claims brought against them. The undisputed facts establish that Dr. Li and Nurse Bailey did not act with a deliberate indifference to Plaintiff's serious medical need.

### A.   Plaintiff's Claims

Plaintiff has brought claims against Dr. Li and Nurse Bailey for alleged deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution. Order for Special Report 3, ECF No. 24. Specifically, she alleges that Nurse Bailey and Dr. Li failed to treat a

---

[2] Plaintiff has only appealed one administrative remedy request all the way through the General Counsel level, administrative remedy request number 1124671. Ex. B, Sentry Report 2. In this request, Plaintiff asked that First Step Act Credits "be posted and that [she] be processed for the CARES act. Ex. E, AR 1124671 at 1. Plaintiff submitted this administrative request to the General Counsel on October 26, 2022, and the General Counsel's Office responded on January 5, 2023. *Id.* This administrative remedy request does not exhaust the claims at issue in this case because the request Plaintiff makes is unrelated to her medical care. In addition, administrative remedy request number 1124671 was not exhausted until *after* Plaintiff brought her claims against Defendants.

uterine fibroid she was diagnosed with in October 2016 and failed to follow a surgical recommendation by an outside provider, Dr. Cox, to have the fibroid removed. *Id*. As a result of this alleged failure, the fibroid has grown larger. *Id*.

**B.      Undisputed Facts**

**1.      Plaintiff's Treatment History**

1.      Ms. McGuire-Mollica entered BOP custody in late September 2016, and she arrived at FCI Aliceville in October 2016.

2.      On October 11, 2016, a nurse practitioner performed a history and physical. Ex. F, Plaintiff's Medical Records, Mollica0019-32.[3] Ms. McGuire-Mollica's vaginal exam was normal. *Id.*, Mollica0031. The encounter note reflects that Ms. McGuire-Mollica had previously had a tubal litigation, which is a surgery to close a women's fallopian tubes. *Id.*, Mollica0025.

3.      On October 14, 2016, Ms. McGuire-Mollica had a follow-up visit with a nurse practitioner because her blood work showed a low hemoglobin level. *Id.*, Mollica0009. Plaintiff reported "that she started having heavy menses after her tubal in 2004 . . . since turning 50 she has started spotting bright red blood daily, and uses pads daily." *Id.* She denied ever receiving blood transfusions. Ms. McGuire-Mollica was started on multivitamins and was scheduled for a visit with the doctor. *Id.*

---

[3] Exhibit F, Plaintiff's medical records from 2016 to 2022, are being filed separately under seal.

4.      Two days later, Ms. McGuire-Mollica was seen by Richard Griffin,

M.D., for an assessment of her menometrorrhagia (excessive uterine bleeding)

occurring four days every cycle. *Id.*, Mollica0005, 0008.  To treat the bleeding,

Dr. Griffin prescribed an injectable hormone, medroxyprogesterone, and to treat

the anemia that resulted from the bleeding, he prescribed iron supplements. *Id.*,

Mollica0007.  He also ordered x-rays, a pap smear, and an offsite gynecological

visit. *Id.*, Mollica0008.  He instructed Ms. McGuire-Mollica to follow-up as

needed in the meantime. *Id.*

5.      On October 21, 2016, Ms. McGuire-Mollica refused the

medroxyprogesterone injection. *Id.*, Mollica0003.  The same day, she signed a

medication refusal form documenting that her abnormal bleeding would not be

controlled if she refused the injection. *Id.*, Mollica0060.

6.      Three days later, Plaintiff reported that she could not tolerate a

medroxyprogesterone injection because it caused migraines and asked for

alternative treatment for her bleeding. *Id.*, Mollica0001.  Dr. Griffin prescribed a

daily oral version of medroxyprogesterone, Provera, to treat the bleeding and

propranolol, twice a day, to treat any migraines. *Id.*

7.      On April 20, 2017, Dr. Griffin performed a chart review and renewed

Ms. McGuire-Mollica's prescriptions for Provera and propranolol. *Id.*,

Mollica0084.

8.      On May 4, 2017, Ms. McGuire-Mollica was seen by an off-site gynecologist, Ted Cox, M.D.  *Id.*, Mollica0106-07.  Dr. Cox evaluated Plaintiff's uterine fibroids and abnormal uterine bleeding resulting in anemia.  *Id.*, Mollica0106.  Dr. Cox conducted a physical exam and found that Plaintiff's uterus was enlarged.  *Id.*  Dr. Cox took a biopsy of endometrial tissue for pathological testing.  *Id.*  Following the exam, Dr. Cox recommended Ms. McGuire-Mollica have a total abdominal hysterectomy once the pathology on the endometrial tissue came back benign.  *Id.*  If the pathology was not benign, she would be referred to UAB for treatment.  *Id.*

9.      On the return from her off-site appointment on May 4, 2017, Ms. McGuire-Mollica was seen by Defendant Sharon Bailey, an RN, who created an encounter note.  *Id.*, Mollica0082.  The note states: "Inmate returning from offsite gynecologist appointment.  Notes sent with inmate state gynecologist will call with biopsy results when available."  *Id.*  This note was reviewed by Dr. Griffin on May 30, 2017.  *Id.*, Mollica0083.

10.     On January 2, 2018, Dr. Griffin ordered a pap smear for Ms. McGuire-Mollica.  *Id.*, Mollica0128.  The results were normal.  *Id.*, Mollica0122.

11.     On March 13, 2018, Ms. McGuire-Mollica received a pelvic ultrasound.  *Id.*, Mollica0162.  It showed an "enlarged uterus appearing to contain a large fundal fibroid of approximately 13 cm" and a "right ovarian cyst."  *Id.*

12.     On March 29, 2018, Dr. Griffin reviewed the ultrasound report. *Id.*, Mollica0163. Based on the results, he entered an order for Ms. McGuire-Mollica to see an off-site gynecologist. *Id.*, Mollica0122.

13.     On April 27, 2018, Dr. Griffin renewed Ms. McGuire-Mollica's prescriptions for Provera and propranolol.

14.     On November 27, 2018, Ms. McGuire-Mollica refused to see an off-site gynecologist for evaluation of her fibroids and cyst. Mollica0145. She was informed that her refusal would result in her conditions being untreated. *Id.*

15.     On April 23, 2019, BOP physician Angel Ortiz, M.D. entered a note that Ms. McGuire-Mollica had refused a gynecologist visit in November 2018 and discontinued the request for an off-site gynecological consult. *Id.*, Mollica0207.

16.     On June 28, 2019, Ms. McGuire-Mollica had bloodwork done, which showed normal iron and hemoglobin levels. *Id.*, Mollica0246.

17.     On August 26, 2019, Ms. McGuire-Mollica was seen at sick call by an RN. *Id.* Mollica0186. She complained of ovarian/uterine pain and pressure. *Id.* She rated the pain at an eight and said the onset was three to five days ago. *Id.* As part of the assessment, the note states: "Chart review reveals documented history of abnormal vaginal bleeding as well noninflammatory disorder of the uterus. OB/GYN consult 03/2018 for evaluation that inmate states she refused at the time

due to heavy vaginal bleeding day of visit." *Id.*, Mollica0187. The R.N. placed Plaintiff in the scheduler to see a provider regarding these issues. *Id.*

18.     On November 25, 2019, Ms. McGuire-Mollica was seen by a nurse practitioner for a chronic care visit. *Id.*, Mollica0171. Plaintiff reported her uterine "bleeding has been better for a couple of months," and she denied any pain or discomfort during the visit. *Id.*, Mollica0173-74. The nurse practitioner entered a new request for a gynecological consult, noting Ms. McGuire-Mollica had previously refused a consult but she "has changed her mind and would like to see OB/GYN." *Id.*, Mollica0173.

19.     On November 26, 2019, Defendant Xinyu Li, M.D., reviewed the nurse practitioner's treatment plan for Ms. McGuire-Mollica and concurred with it. *Id.*, Mollica0168.

20.     On December 18, 2019, Ms. McGuire-Mollica had a pelvic ultrasound. *Id.*, Mollica0309. The ultrasound showed a large uterine fibroid of thirteen centimeters. *Id.* Dr. Li reviewed the ultrasound results on January 3, 2020. *Id.*, Mollica0310.

21.     On April 20, 2020, FCI Aliceville received the results of an endometrial biopsy preformed on Ms. McGuire-Mollica, which showed the growth was benign. *Id.*, Mollica0304. Dr. Li reviewed the results that day. *Id.*, Mollica0305.

22.     On July 9, 2020, Ms. McGuire-Mollica saw an off-site gynecologist

for an annual exam.  *Id.*, Mollica0294.  She reported bleeding with clotting for the

last twelve days and five to six days of cramping.  *Id.*  An ultrasound showed a

thirteen-centimeter uterine fibroid.  *Id.*  An endometrial biopsy was performed, and

the results were benign.  *Id.*, Mollica0299.  A part of the "plan," the doctor

discussed a potential medication to treat bleeding, lupron depot, and the effect the

size of uterus had on bleeding and pain.  *Id.*, Mollica0295.

23.     On August 11, 2020, Defendant Sharon Bailey performed a chart

review and created an EMR note.  *Id.*, Mollica0264.  Ms. McGuire-Mollica

"submitted a written request for a lower bunk restriction stating that she has a 15 lb

tumor in her uterus."  *Id.*  Nurse Bailey entered a note stating:

> Chart review revealed inmate diagnosed with [] an enlarged uterus
> four years ago and an OB/GYN consult was entered.  Inmate refused
> to go out on several occasions, but was finally seen about a month ago
> and biopsies were done that revealed growths are benign. Inmate
> diagnosed with fibroids.  Inmate does not appear to meet any of the
> 2012 Kendig memo criteria for a lower bunk restriction at this time.

*Id.*

24.     On April 21, 2021, Defendant Dr. Li saw Ms. McGuire-Mollica for a

chronic care visit.  *Id.*, Mollica0334.  Regarding her bleeding issues, Dr. Li

documented Plaintiff was doing well, and he would continue her oral hormone

medication.  *Id.*

25.     On July 26, 2021, Dr. Li saw Ms. McGuire-Mollica for a chronic care visit.  *Id.*, Mollica0334.  Regarding her bleeding issues, Dr. Li again documented Plaintiff was doing well, and he would continue her oral hormone medication.  *Id.*, Mollica0327.

26.     In August 2021, Ms. McGuire-Mollica was transferred from FCI Aliceville to FCI Tallahassee.  *Id.*, Mollica0361, 0364.

**2.      Moving Defendants**

**a.      Nurse Sharon Bailey**

27.     Sharon Bailey has worked as a registered nurse at FCI Aliceville from February 2015 to the present.  Ex. G, Bailey Decl. ¶ 2.

28.     As a registered nurse, Nurse Bailey is not qualified to perform a total abdominal hysterectomy on a patient.  *Id.* ¶ 3.

29.     Complex surgeries, such as hysterectomies, cannot be performed onsite at FCI Aliceville, because the medical facilities are not set up for such procedures.  *Id.* ¶ 4.

30.     When an inmate requires a complex surgical procedure, a BOP medical provider, such as a physician or nurse practitioner, places a request for a specialist consult in BOP's electronic medical record system.  *Id.* ¶ 5.  Once that request is approved by the BOP Clinical Director responsible for reviewing such requests, the inmate is scheduled to see an outside surgeon for a consult.  *Id.*  That

outside surgeon will exam the inmate, and then if medically appropriate perform the needed surgery. *Id*.

31.    As a registered nurse at FCI Aliceville, Nurse Bailey does not have independent ability to place or order a request in BOP's electronic medical record system for an inmate to be referred to an outside specialist, such as a surgeon, for a consult. *Id*. ¶ 6. Only providers, such as physicians or nurse practitioners, have the independent ability to place or order such a request in BOP's electronic medical record system. *Id*.

32.    At no time did Nurse Baily ever disregard a risk of serious harm to Plaintiff. *Id*. ¶ 7.

### b.    Dr. Xinyu Li

33.    Dr. Li started as a physician at FCI Aliceville on September 15, 2019. Ex. H, Li Decl. ¶ 2. Dr. Li treated Plaintiff until she was transferred from FCI Aliceville in August 2021. *Id*.

34.    At no time did Dr. Li ever disregard a risk of serious harm to Plaintiff. *Id*. ¶ 3.

35.    Between September 2019 and August 2021, Plaintiff's uterine symptoms were stable. *Id*. ¶ 4.

36.    Plaintiff's ultrasounds during this period showed her uterine fibroids were stable in size. *Id*. ¶ 5; Ex. F, Mollica0163, Mollica0309, Mollica0294.

37.     During this same period, Plaintiff did not have anemia, and her hemoglobin levels were within a normal range.  Ex. H, ¶ 6; Ex. F, Mollica0246, Mollica0286.

38.     In July 2020, Plaintiff saw an offsite gynecologist.  Ex. H, ¶ 7; Ex. F, Mollica0294.  The gynecologist performed an ultrasound and a biopsy.  Ex. F, Mollica0294, Mollica0299.  Based on the exam, the gynecologist did not recommend a hysterectomy, and Dr. Li reviewed and agreed with the recommendation.  Ex. H, ¶ 7; Ex. F, Mollica0295.

## C.     Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own

affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial.  *See id.* at 324.

The substantive law identifies which facts are material and which are

irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All

reasonable doubts about the facts and all justifiable inferences are resolved in favor

of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.

1993).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the

evidence is merely colorable, or is not significantly probative, summary judgment

may be granted.  *See id.* at 249.

**D.    Plaintiff Cannot Met Her Burden of Proof to Establish Deliberate
        Indifference.**

Neither Nurse Bailey, nor Dr. Li, acted with deliberate indifference to

Plaintiff's serious medical need, and both are entitled to judgment as a matter of

law.

**1.    Constitutional Standard For Deliberate Indifference Claims**

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual

punishments."  U.S. Const. amend VIII.  Under the Amendment, the "[f]ederal and

state governments . . . have a constitutional obligation to provide minimally

adequate medical care to those whom they are punishing by incarceration."  *Harris*

*v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).  The Supreme Court has held

that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 (1976).

A deliberate-indifference claim entails both an objective and a subjective component.  *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).  First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—that, "if left unattended, poses a substantial risk of serious harm."  *Id*. (quotation omitted).  Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence."  *Id*.

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb."  *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020).  The Constitution does not require that the medical care provided to inmates be "perfect, the best obtainable, or even very good."  *Harris*, 941 F.2d at 1510 (quotation omitted).  Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Id*. at 1505

(quotation omitted).  In addition, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment."  *Id.*

### 2.    Nurse Bailey

In 2017, an outside gynecologist, Dr. Ted Cox, recommended that Plaintiff have a total hysterectomy.  Ex. F, Mollica0106.  Nurse Bailey saw Plaintiff immediately after this visit and entered a note in the medical record system regarding Plaintiff's gynecological visit.  *Id.*, Mollica0082.  As an R.N., Nurse Bailey did not have the ability to perform a total hysterectomy on Plaintiff herself.  Ex. G, ¶ 3.  In addition, Nurse Bailey did not have authority to order or enter a request for a surgical consult for a hysterectomy in the BOP system.  *Id.*, ¶ 6.  As a result, Plaintiff cannot prove that Nurse Bailey disregarded a risk of serious harm to Plaintiff.  Nurse Bailey provided the treatment and care that was within her scope of authority to provide and did not intentionally delay any treatment to Plaintiff.  *See Brown*, 387 F.3d at 1351 (stating deliberate indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with treatment once proscribed.") (quotations omitted).

### 3.    Dr. Li

Dr. Li did not start at FCI Aliceville until September 15, 2019.  Ex. H, ¶ 2.  During the time period Dr. Li treated Plaintiff, her uterine symptoms were stable.

*Id.*, ¶ 4.  The fibroid size did not increase, and her hemoglobin levels were normal.

*Id.* ¶¶ 4-5, Ex. F, Mollica0163, Mollica0309, Mollica0294, Mollica0246,

Mollica0286.  In addition, Plaintiff saw an outside gynecologist who did not

recommend a total hysterectomy.  Ex. H, ¶ 6; Ex. F, Mollica0295.  Dr. Li agreed

with the recommendation.  Ex. H, ¶ 6.  That Plaintiff argues she should have

received different medical treatment is a difference in medical opinion between the

prison's medical staff and Plaintiff as to course of her treatment, which fails to

support a claim of deliberate indifference.  *See Harris*, 941 F.2d at 1505.

<div style="margin-left: 50%;">

PRIM F. ESCALONA
UNITED STATES ATTORNEY

/s/ Don B. Long III
Don B. Long III
Assistant U.S. Attorney
U.S. Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2001
(205) 244-2181 (fax)

</div>

19

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served upon the

Respondent, by mailing a copy of the same by first class certified United States mail,

postage prepaid, on October 20, 2023, addressed as follows:

> Terri McGuire-Mollica
> 31860-001
> Marianna Federal Correctional Institution
> Inmate Mail/Parcels P.O. Box 7007
> Marianna, FL 32447
>
> **/s/Don B. Long III**
> DON B. LONG III
> Assistant United States Attorney