FILED
2023 Nov-20, PM 01:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Bivens p 1
DATE: 11/16/2023 09:46:08 AM

FILED

2023 NOV 20  A 11: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

TERRI MCGUIRE-MOLLICA,
      Plaintiff


v.                                            Case No. 7:20-cv-01768-SGC

RICHARD GRIFFIN, XINYU LI,
  and SHARON BAILEY,
      Defendants

--------------------------------------------------------------------

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL REPORT,
MOTION TO DISMISS, and MOTION FOR SUMMARY JUDGMENT
and
PLAINTIFF'S REQUEST TO ISSUE SUBPEONAS AND PROCEED TO TRIAL

--------------------------------------------------------------------

COMES NOW, Terri McGuire-Mollica, pro se litigant, unskilled and unschooled in the law, opposing Defendants'

Special Report, and Motions to Dismiss and Summary Judgment. Plaintiff requests that this Honorable Court DENY

Defendants' Motion to Dismiss and Motion for Summary Judgment; direct Court of Clerk to issue subpoena and

interrogatories on file to Dr. Lorissa Autery; and allow Plaintiff proceed to trial.


Part I

A.   Summary

Prison officials violate the Eighth Amendment when "they commit acts or omissions sufficiently harmful to

evidence deliberate indifference to an inmate's serious medical needs." (Estelle v. Gamble, 429 US 97, 104-105,

97 S. Ct. 285, 50 L Ed 2d 251 (1976))  "A total deprivation of care is not a necessary condition for finding a

constitutional violation: grossly incompetent or inadequate care can also constitute deliberate indifference, as can

a doctor's decision to take an easier and less efficacious course of treatment." (Langford v. Norris, 614 F 3d 445,

460, 2010 US App LEXIS 14800 (8th Cir 2010))    A delay need not inflicted a permanent injury to sustain a deliberate

indifference claim; the infliction of unnecessary aping that serves no penological purpose is itself actionable.

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

(Estelle at 104-105)

A defendant may also be liable under the Eighth Amendment for "intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." (Estelle at 104-105)   Whether a delay in providing prescribed treatment constitutes deliberate indifference is a fact specific inquiry into whether the delay was "medically unacceptable under the circumstances." (Harper v. Ryan, 2020 US Dist LEXIS 29380, 2020 WL 836824 at *21 (D Ariz 2020)

In support of Plaintiff's claim of deliberate indifference to her serious medical needs, in violation of the Eighth Amendment, she avers the following:

1.      Defendants' had subjective and actual knowledge of the extent of her medical problems, they were involved in decisions related to diagnosis or treatment, and were able to intervene in her medical treatment but failed to do so.

2.      Defendants do not dispute the accuracy of Plaintiff's allegations contained in her Amended Complaint (Doc 6), outlining the numerous visits and sick calls that Plaintiff had with Defendants over a nearly 5-year period (2016 - 2021)

The following information is taken directly from Defendant's "Special Report:"

3.      Dr. Richard Griffin, a gynecologist employed by FCI Aliceville during 2016-2018, diagnosed Plaintiff with a uterine fibroid in October 2016. (Doc 47 p8)

4.      Plaintiff was seen by outside (non-FBoP) gynecologist/specialist Dr. Ted Cox on 5/04/2017.  He recommended a hysterectomy to control the growth of the fibroid and excessive bleeding.

5.      The only documentation in Defendants' exhibits showing that Dr. Griffin reviewed Dr. Cox's report, concurred with it or disagreed with it is a computer-generated statement "Reviewed" by Griffin in June 2019 from Oakdale Prison (Defendant's Exhibit F "mollcia0108")

6.      Defendant Sharon Bailey triaged Plaintiff when she returned to FCI Aliceville on 5/04/2017.  She noted Plaintiff's chart that the results of the biopsy would be forthcoming. (Doc 47 p9)  Also, per Exhibit F "mollica0107" Dr. Cox would "attempt to arrange surgery."

7.      Plaintiff was seen by outside (non-FBoP) gynecologist/specialist Dr. Lorissa Autery on 7/09/2020. Although the doctor's notes submitted by Defendants are incomplete (missing 12 of 22 pages), there is still a recommendation to fill a prescription for Lupron. (Doc 47 p 12)

8.      Dr. Li claims that he reviewed the recommendations from Dr. Autery and agreed with them.  However,

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

----------------------------------------------------------------------------------------

the prescription was never filled. (Doc 47-9 p2)

9.    Dr. Li "reviewed" the results of her 5/04/2017 biopsy on 4/20/2020. (Doc 47, p11)

10.    Nurse Sharon Bailey falsified Plaintiff's medical records claiming "[Plaintiff] refused to go out on several occasions [for consultation] even though there is no documentation collaborating this statement. (Doc 47, p12)

Where there is a "delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem and the delay is unjustified, a prisoner states a claim."  (Hill v. DeKalb Regional Youth Detention Center, 40 F 3d 1176, 1187-88 (11th Cir 1994)

In addition to the initial fibroid, an ultrasound performed on 11/21/2022 showed two additional 4-cm fibroids had grown in Plaintiff's uterus. (Attachmend D)  Also, the weight and pressure of the enlarged uterus (the size of a 18-week pregnancy) has caused serious issues with Plaintiff's stomach, intestines, and colon.  She was diagnosed with two hernias, diverticulosis, and gastritis in 2022 and 2023.  (see Attachment A)

Plaintiff has engaged the services of gynecological specialists Sparks & Favor, PC.  Wendy Gregory, MD, reviewed Plaintiff's FBoP generated medical records and states the following (see Attachment B):

-    "I do not see a medical reason no hysterectomy was done before now."

-    "Although her bleeding has improved and her fibroid is stable in size, I still agree with the most recommendation to proceed with hysterectomy and bilateral salpingo-oophorectomy is she has fully recovered from Covid and pneumonia."

-    "The large size [of the fibroids] is contributing to her symptoms and does impact her comfort on a daily basis."

⁴/₄₉

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Biven Response II
DATE: 11/16/2023 11:01:02 AM


Part II.    In support of Plaintiff's opposition to Defendants' motions, Plaintiff disputes and/or opposes the following:

I.    Defendants' Special Report

C.    Defendants' Relevant Documents

       Plaintiff disputes the statement that "all documents relevant to the claims and defense in this action are included as attachment to this report." (Doc 47 p2)

       Plaintiff was housed at FCI/FPC Aliceville from September 2016 - August 2021. After transit (including stops in Oklahoma and Tallahassee), she was been housed at FPC Marianna since October 2021.

       Plaintiff disputes the authenticity of the FBoP medical records submitted by the defendants, based on the following:

       a.    More than 150 pages of the Medical Records (Defendants' Exhibit F) appear to be generated at Yazoo City Prison, a men's facility located in Mississippi. (see pages 29-54; 87-103; 129-143; 208-229; 270-285; 377-397; 485-511)  Plaintiff has never been housed at the men's facility.

       b.    At least 2 pages of the Medical Records (Defendants' Exhibit F) used by Defendants' to support their motions, were generated at Oakdale Prison, a men's facility located in Louisiana (see pages 108 & 167) as follows:

              (i)    Outside gynecologist Dr. Ted Cox's doctor notes and recommendations from 5/4/2017 (pages 106 & 107) were "reviewed" by Dr. Richard Griffin from Oakdale, LA, on 6/30/2019 (see page 108).

              (ii)    Outside pathology report from 1/16/2018 (page 166) were "reviewed" by Dr. Richard Griffin from Oakdale, LA, on 6/30/2019 (see page 167)

       c.    Medical Records from outside gynecologist Dr. Lorissa Autery (pages 293-302) are incomplete. The entire record is 22 pages per the pre-numbering from the doctor's office; the records provided by Defendants only contain 10 of the 22 pages. Defendants' rely heavily on Dr. Autery NOT recommending a hysterectomy, in their report and motions when in fact she did just that. (see Affidavit I)

       d.    According to Defendants' records, a pathology report from Cunningham Pathology dated 5/05/2017, was not received until 4/24/2020 (see page 304) and was "reviewed" by Dr. Li on the same date (see page 305). Dr. Li was not even employed at Aliceville in 2017 when the report was generated. Defendants' use this document in their report and motions.

D.    Defendants' Affirmative Defenses

       1.    Defendant's claim they are entitled to qualified immunity.

              Defendant's do not automatically have "qualified immunity" simply because they are employed by the United States government or the Federal Bureau of Prisons ("FBoP"). Qualified immunity shields government official performing discretionary functions from civil liability unless their conduct "violates clearly established statutory or

Case 7:20-cv-01768-SGC    Document 52    Filed 11/20/23    Page 5 of 34

5/19

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
------------------------------------------------------------------------

constitutional rights of which a reasonable person would have known." (Harlow v. Fitzgerald, 457 US 800, 818, 102 S.Ct. 2727, 73 L Ed 2d (1982))

When determining whether defendants are entitled to qualified immunity, the Court considers "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of deprivation." (Rizzo v. Goode, 423 US 362, 376-77, S.Ct. 598, 46 L Ed 2d 561 (1976))

Plaintiff has alleged facts, that if proven, could demonstrate deprivation of her Eighth Amendment rights by Defendants Griffin, Li, and Bailey. Moreover, the right to be free of cruel and unusual punishment due to deliberate indifference to an inmate's serious medical needs is well established. As state by the Supreme Court in 1976, "We therefore conclude that deliberate indifference to a serious medical needs of prisoner constitutes the "unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." (Gregg v. Georgia, 428 US 153, 173, 96 S.Ct. 2925, 49 L Ed 2d 859 (1976))

Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [a Bivens claim]. (Estelle v. Gamble, 429 US 97, 014-05, 97 S.Ct. 285, 50 L Ed 2d 251 (1976)) This right extends to unreasonable delays in providing treatment as well as the outright denial of treatment is also well established. (Allard v. Baldwin, 779 F3d 768, 772, 2015 US App LEXIS 3503 (6th Cir 2015))

Plaintiff's right to adequate medial care was well established at the time of the alleged deprivations. Therefore, qualified immunity does not bar Plaintiff's claims against these defendants.

2.    Defendants assert that the "statute of limitations bars some of Plaintiff's claims."

Plaintiff only has one claim, which states that defendants violated her Eighth Amendment Constitutional right to be free from cruel and unusual punishment. According to the Eighth Amendment, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

Pursuant to the Federal Accrual Standard, an inmate's cause of action expires two-years from the date she becomes aware of the injury resulting from the corrections officials' failure to provide proper medical treatment for her medical issues. Plaintiff was not aware that she would not receive medical treatment for her fibroids until after her second gynecology consult in July 2020. The claim of action was filed in November 2020; therefore, none of the Plaintiff's claims are time-barred.

The various issues presented are part of a long series of acts designed to deprive Plaintiff of proper

6/9

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
------------------------------------------------------------------------------------

medical care, that began in October 2016 and still continues today.

II.    Defendants' Motion to Dismiss  (Doc 47 pp 3 - 6)

Plaintiff opposed Defendants' Motion to Dismiss.

B.    Defendant's move to dismiss the action based on claim that "Plaintiff has not exhausted her administrative remedies" despite the fact that Plaintiff included copies all of remedies filed as well as any responses received in her original motion (Doc 1).

The administrative remedy program was designed to make the FBoP aware of any grievance and allow it to resolve the issue at hand prior to an inmate filing suit in a district court.  The program is governed under 28 CFR sections 542.10 - 542.19.  FBoP's policy 542.18 governs the response time limits afforded to FBoP officials to reply to inmate's grievance.  (Attachment C)

Per section 542.18, "once filed, a response shall be made ... within 30 calendar days."  Also, "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

Plaintiff's Administrative Remedy Form 10 was filed with Regional Office on 6/26/2020.  Plaintiff did not receive a response within the time frame allotted, so it was deemed "denied" under section 542.18.  She continued on to the next step by filing the Form 11 Central Office. (Doc 1, p 43)   Again, a reply was not received within the time frame allotted; therefore, the form was deemed denied.

Plaintiff has done all administrative remedies that were available to her.  (Title 42 USC section 1997e(a)) No place within the administrative remedy guidelines does it state that an inmate must wait on a response from one level before proceeding to the next level.  Plaintiff cannot control the mail, whether the FBoP's employees actually process or respond to the form, or even when or if the remedy is logged into the FBoP system.

"Under the 'prison mailbox rule,' a pro se prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing."  (Daker v. Commissioner, Georgia Dept. of Corrections, 820 F3d 1278, 1286 (11th Cir 2016))   "Absent evidence to the contrary [we] assume that the prisoner's filing was delivered to prison authorities the day he signed it."  Id. at 1286

Once deposited into the Prison Mailbox system, the party is deemed "served" under the Prison Mailbox Rule. Therefore, Plaintiff "served" the General Counsel when she placed it in Aliceville's Prison Mailbox, whether or not the mail was actually sent by Aliceville or whether Central Office logged it into sentry.

Therefore, Plaintiff has done all administrative remedies that were available to her under Title 42 USC section

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

1997(e)a.

[NOTE: It should be noted that on her original Bivens Complaint, Plaintiff alleged that the mail office staff at FCI/SPC Aliceville were tampering with Plaintiff's (and others) incoming and outgoing mail.]

C.    Defendants' claim that the actual remedies filed did not "form the basis of this claim."  (Doc 47 pp 5 - 6)

       Plaintiff opposes this statement.

       Defendants provide no authority or citations any pleading requirement contained in the BoP administrative remedy program to support this argument.

       The exhaustion requirement of the PLRA is interpreted in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally."  (Porter v. Nussle, 534 US 516, 525, 122 S.Ct. 983, 152 L Ed 2d 12 (2002))   In Jones v. Bock (549 US 199, 218 127 S. Ct. 910, 166 L Ed 2d 798 (2007)),  the Supreme Court held that "it is a prison's requirement, and not the PLRA, that define the boundaries of proper exhaustion."  While the PLRA requires prisoner exhaust "such administrative remedies as are available (42 USC section 1997e(a)) "nothing in the statutes imposes a 'name all' requirement.  (Jones at 217)

       The leading purpose of the exhaustion requirement, which the court identifies as "allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful records." (Jones at 221)    That is, "one 'exhausts' processes, not forms of relief." (Booth v. Churner, 532 731, 739, 12 S. Ct. 1819, 149 L Ed 2d 958 (2001))

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

---------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Biven Response III
DATE: 11/16/2023 09:54:02 AM


III.    Defendants' Motion for Summary Judgment (Doc 47 p 6 - 13)

    Plaintiff opposes the Motion for summary judgment.

    Defendants claim that "the undisputed facts establish the Dr. Li and Nurse Bailey did not act with a deliberate indifference to Plaintiff's serious medical need"  (Doc 47 p 6)  and provided "undisputed facts" to support that argument.

B.   Plaintiff disputes the following from Defendants "Undisputed Facts." (Doc 47 pp 7 - 13)

    3.   Plaintiff disputes that the medical records state that she was "started on multivitamins" as claimed on (Doc 47 p 7)  The medical records provided do not state this.

    4.   Plaintiff denies that she "refused" treatment. (Doc 47 p 8)  She opted for the pill form instead of the injection due to chronic migraine headaches.  The generic forms used to request any changes to treatment plans or appointments use the words "Medical Treatment Refusal."  (Exhibit F mollica0060)

        Also, the form does not state "abnormal bleeding would not be controlled."

    11.  The ultrasound performed on March 13, 2018, in addition to the 13 cm fibroid, results also showed two 5 cm cysts and a Nabothian cyst on the cervix had grown since the last ultrasound, showing the uterus was not "stable". (Doc 47 p 9 and Exhibit F mollica 162)

    14.   Plaintiff did not "refuse" to see a specialist.  Aliceville Nurse Knopp told her that because she was bleeding and clotting heavily, she could not be examined/evaluated that day, per the outside doctor.  The forms used are generic and contain the language "refused" but was used to delay the trip.  (see Affidavit 1, #4)

        She also disputes that "she was informed that her refusal would result in her conditions being untreated." There is nothing in the medical records that collaborate this statement.

[Note:   It should be noted here that Plaintiff already had a diagnosis and treatment plan from Dr. Cox in 2017; therefore, there was no medical need for another consultation for the same issue.]

    21.   Disputes that "On April 20, 2020, FCI Aliceville received the results of an endometrial biopsy..." (Doc 47 p 11)

        The biopsy report (Exhibit Mollica0305) is from Plaintiff's 5/17/2017 visit with Dr. Ted Cox.  Plaintiff disputes that it was not received for more than three years after it occurred.  Dr. Li was not even employed at Aliceville when this biopsy was performed.

    22.   Disputes that "A part of the 'plan,' the doctor discussed a potential medication to treat bleeding, Lupron depot, and the effect of the size of the uterus had on bleeding and pain." (Doc 47 p 12)  The issues with this

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

---

statement are as follows:

    a.    These medical records are missing 12 of 22 pages (or more than 50%) of Dr. Autery's doctor notes. The record only contain 10 pages (Exhibit F pp 293-302).

    b.    The "plan" referenced in the statement is located on the bottom of page "21 of 22" (Mollica0295). The remainder of the "plan" is included on page 22 and is not in the medical records.

    c.    Dr. Autery prescribed two separate medications.  See original complaint for details (Doc 1).

    d.    Dr. Autery also recommended a hysterectomy, coloscopy, and mammogram. (see Affidavit 1, #1)

23.    While the subject of this medical note that Bailey entered into the medical records is correct (i.e. she denied Plaintiff a "bottom bunk pass" (see Doc 47, p 12)) it should be noted that she wrote "inmate refused to go out on several occasions" is a complete fabrication.  There is nothing in the medical records to support this claim.

24.    The date of this encounter is actually April 28, 2021. Plaintiff disputes "Dr. Li documented Plaintiff was doing well." (Doc 47, p 12)  These screens are pre-filled with the same information as the most recent chronic care visit. (Exhibit F Mollica0334 v. Mollica0327).

25.    Plaintiff also disputes this encounter for the same reason as above as #24.  Documents Mollica0334 and Mollica0327 are identical until the last few lines on Mollica0327, which is related to asthma medication.  Dr. Li did not discuss that he would "continue her oral hormone medication."  This visit was to add an asthma inhaler.

Moving Defendants

a.    Nurse Sharon Bailey  (items 27 - 32).

    Plaintiff disputes Bailey's assertions in this motion as well as her affidavit that "at no time did Nurse Bailey ever disregard a risk of serious harm to Plaintiff." (Doc 47 p14)

    However, Defendant Bailey does not dispute Plaintiff's assertions from both the Original Complaint (Doc 1) and the Amended Complaint (Doc 6)  that Nurse Bailey treated her from October 2016 - August 2021 and never provided any meaningful care for Plaintiff's serious medical needs.

    Bailey is the "triage" or "head" nurse at Aliceville, so almost every visit, whether sick call or chronic care visit, means some sort of contact with Bailey before seeing a provider.  Plaintiff had at least nine separate encounters with Bailey over this 5-year period related strictly to these fibroids.  (see Amended Complaint Doc 6 for listing of visits)

    Bailey is a registered nurse, licensed by the state of Alabama.  She has attended nursing school and is well aware of the effects of untreated medical conditions.  She had subjective and actual knowledge of the extent of Plaintiff's medical problems, she was involved in decisions related to treatment and care, and she was able to

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
------------------------------------------------------------------------------------------

intervene in her medical treatment but failed to do so.

Bailey was the provider who triaged Plaintiff after her visit to Dr. Cox in May 2017 (#9 of Defendants "undisputed facts").  She clearly wrote that "gynecologist will call with biopsy results when available."  If we are to believe the medical records provided by Defendants, those results did not become available until April 2020 (#1 & 24 of Defendants "undisputed facts") even though the report was dated 5/05/2017.

The only "care" that Bailey provided was denying Plaintiff, who was 54-year old women suffering from severe hemorrhaging and large fibroids a "bottom bunk pass" during a 4-month COVID-19 24-hour/day lockdown, which would have allowed Plaintiff to sleep on a lower bunk rather than having to climb a ladder to reach a 5' high top bunk when Aliceville has almost 1000 bottom bunks on its compounds. (#23 of Defendant's "undisputed facts").

Bailey had the authority to schedule Plaintiff to see an inside-provider/doctor, she had the authority to provide Plaintiff adequate medical care by making arrangement to get Plaintiff's medications refilled; she had the responsibility of obtaining pathology results from outside providers, such as Dr. Cox, and doctor's notes and recommendations, such as from Dr. Autery in 2020.  She could have easily given Plaintiff a bottom bunk pass.

At no time did Nurse Baily ever offer Plaintiff any treatment for her serious medical issues over a period of 5 years.  While she may not have been able to order outside medical appointments or consults, neither Plaintiff nor the Defense were able to find one instance of Bailey referring Plaintiff to an in-house physician or mid-level practitioner for treatment, consult with the physicians about Plaintiff, or even request prescriptions be filled to alleviate the pain and suffering.  She in essence, stopped the encounters are the triage level, despite repeated attempts of Plaintiff to obtain medical care.  She had access to Plaintiff's medical records at every sick call or visit and NEVER offered any type of treatment.

Bailey is also the provider that fabricated notes in the medical records, thereby creating fraudulent documents that cannot be relied upon in this proceeding. (see #23 above)


b.    Dr. Xinyu Li (33 - 38)

Plaintiff disputes Defendant Li's assertions in this motion as well as his affidavit that "at no time did Dr. Li ever disregard a risk of serious harm to Plaintiff" as well as the statements that "Plaintiff's uterine symptoms were stable" and "the gynecologist did not recommend a hysterectomy."  (Doc 47 p4)

Defendant did not dispute Plaintiff's assertions in her original complaint (Doc 1) or amended complaint (Doc 6) that she meet with Li at least 12 times over the 2-year period to discuss her excessive bleeding and pain.

Dr. Li is an licensed physician, employed by the Bop for many years.  He has been stationed at FCI

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
--------------------------------------------------------------------------------

Tallahassee, Coleman Women's Camp, and FCI/SPC Aliceville. He attended an accredited medical school and is well aware of the danger of untreated uterine fibroids, including potential hemorrhaging and hernias from the weight and pressure of the enlarged uterus. He had a subjective knowledge of the extent of Plaintiff's medical problems, he was involved in decisions related to diagnosis and treatment, and was able to intervene but chose not to do so.

35.    Plaintiff disputes the "between September 2019 and August 2021 Plaintiff's uterine symptoms were stable. (Doc 47 p 14)

There is no evidence or documentation in the medical records to support this statement. While Plaintiff had more than 12 encounters with Defendant Li during this period, he never ordered any tests to be performed or even examined her. He never offered medication to control the pain or bleeding.

In fact, an ultrasound performed on Plaintiff after arrival at FPC Marianna, showed the additional growth of two nearly 4-cm fibroids on the uterus (see Attachment **).

36 .    Disputes "ultrasounds during this period showed her uterine fibroids were stable in size."

[See #35 above] The last ultrasound was performed in 7/2020. There is no documentation in Plaintiff's medical records to support this claim or to show that Defendant Li ever looked at her medical records, much less "compared ultrasounds." In fact, Plaintiff's fibroids were not stable; in an ultrasound performed at FPC Marianna on 11/21/2022 shows that two additional fibroids had grown since the 7/2020 ultrasound. (Attachment D)

38.    Disputes that "the gynecologist did not recommend a hysterectomy." (see #22). Dr. Autery did in fact recommend a hysterectomy to Plaintiff and even showed her how the incision would be made and discussed the recovery period and care Plaintiff would need after surgery. (see Affidavit 1).

Also disputes that "Dr. Li reviewed and agreed with the recommendation." (Doc 47 p15) There is no documentation in the medical records that support this statement.

34.    Disputes "at no time did Dr. Li ever disregard a risk of serious harm to Plaintiff."

For more than two years, Dr. Li failed to provide treatment to Plaintiff for her uterine fibroids. Dr. Li meet with Plaintiff on at least 15 separate occasions during this period and almost every time they discussed her pain and hemorrhaging. He even "googled" her symptoms more than once on his phone during an office visit. There is no documentation in the medical records provided to show that he provided any meaningful care for her uterine fibroids. Due to the lack of care, her fibroids continued to grow and other medical conditions have been diagnosed. (see Attachment A)

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Biven Response IV
DATE: 11/16/2023 09:58:19 AM


D.  Deliberate Indifference (Doc 47 pp 16)

   a.  Defendants Sharon Bailey, RN and Xinyu Li, MD, both claim that neither "acted with deliberate indifference

to Plaintiff's serious medical needs, and both are entitled to judgment as a matter of law." (Doc 47 p 16)

   Plaintiff disputes this statement based on the simple fact that after 7 years in FBoP custody, she has never been

given meaningful treatment for the fibroid, that started out as about 6 cm in size and could have been laparoscopically.

The fibroid has grown to more than 13 cm and at least two additional 4 cm fibroids were found in 2022.  Her health

has deteriorated as she has been diagnosed with Post Traumatic Stress Disorder, Diverticulosis of the Colon, Hiatal

Hernia, Inguinal Hernia, Chronic Gastritis, Chronic Duodenitis, Enlarged Lymph Nodes. (see Attachment A)

   Prison officials violate the Eighth Amendment when "they commits acts or omission sufficiently harmful to

evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 429 US 97, 104-5,

97 S.Ct. 285, 50 L Ed 2d 251 (1976)   "A total deprivation of care is not a necessary condition for find a constitutional

violation:  grossly incompetent or inadequate care can also constitute deliberate indifference, as can a doctor's

decision to take an easier and less efficacious course of treatment."  (Langford v. Norris, 614 F 3d 445, 460,

2010 US App LEXIS 14800 (8th Cir 2010))    A delay need not inflict a permanent injury to sustain a deliberate

indifference claim; the infliction of unnecessary pain that serves no penological purpose is itself actionable.

(Estelle v. Gamble @ 104-105)

   The Supreme Court expressly identified "prison official's intentionally denying or delaying access to medical

care or intentionally interfering with treatment once prescribed" as examples of deliberate indifference.  (Estelle

at 104-105)    Whether a delay in providing prescribed treatment constitutes deliberate indifference is a fact

specific inquiry into whether the delay was "medically unacceptable under the circumstances." (Harper v. Ryan,

2020 US Dist LEXIS 29380, 2020 WL 836824 at *21 (Ariz 2020))

   Finally, courts have long recognized that a "defendant who delays necessary treatment for non-medical

reasons may exhibit deliberate indifference." (Farrow v. West, 320 F 3d 1235, 1346 (11th Cir 2003)

   Plaintiff engaged the services of a gynecological specialist, Wendy Gregory, MD. (see Attachment B) in July

2023.  Pursuant to her review of Plaintiff's FBoP generated medical records, she clearly states:

   - "I do not see a medical reason no hysterectomy was done before now."

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
--------------------------------------------------------------------------------

- "Although her bleeding has improved and her fibroid is stable in size, I still agree with the most recent recommendation to proceed with hysterectomy's and bilateral salpingo-oophorectomy if she has fully recovered from Covid and pneumonia."

- "The large size of the fibroids is contributing to her symptoms and does impact her comfort on a daily basis."

b.   Defendants, in their special report, seem to allege that Plaintiff received care for her condition while incarcerated and that she was regularly seen at health services by Nurse Bailey, as well as Drs. Griffin and Li. At best, defendants assert, Plaintiff's allegations are mere disagreements with her prescribed treatment (Doc 47 at p.19)  However, the fact that Plaintiff was regularly seen by these Defendants and given no meaningful care reinforces Plaintiff's claim that Defendants were deliberately indifferent to her health care needs.

Defendants' suggestions that Plaintiff's complaint amounts to no more than a disagreement with her prescribed course of treatment misapprehends, if not mischaracterizes, her allegations.  Plaintiff has taken no issue with her outside consultants' prescribed course of treatment.  To the contrary, Plaintiff alleges not that she disagreed with the prescribed course of treatment, but that it was NEVER implemented.

Defendants years-long delay in providing care evidenced Defendant's deliberate indifference to her serious medical needs.  Defendants' focus on the treatment Plaintiff received ignore the gravamen of Plaintiff's claim, which focuses on the fact that she still has never received any meaningful care for her medical issues and has been diagnosed with other serious health issues, such as PTSD, diverticulosis of colon, two separate hernias and other.

In short, Defendants' arguments miss the mark.  Plaintiff need not allege she received no treatment whatsoever to make a prima facie case for deliberate indifference.  A delay in prescribed treatment that causes unnecessary pain and serves no penological purpose can sustain a deliberate indifference claim alone, and Plaintiff has alleged the delay in acting on her physicians recommendations caused her unnecessary and severe pain and worsened her condition.  (Estelle, 429 US 97 at 104-05)

Even routine medical appointments inside FCI Aliceville were delayed or ignored.

(i)   Dry. Griffin "ordered X-rays, a pap smear..." on 10/16/2016.  (Doc 47 p8)  X-rays were never performed and the pap smear was done in January 2018 and not reviewed until March 2018. (see Mollica0122)

(ii)   See defendants' assertion in August 2019 Plaintiff went to sick call for pain. (Doc 47 p 10)   The Note claims that she was "put in for doctors appointment."  However, she was NEVER seen.  Plaintiff suffered severe abdominal pain, sought an immediate medical appointment, but was ignored.

(iii)   Dr. Griffin order mammogram on 10/16/2016.  It was preformed on 7/18/2018 and reviewed on 10/11/2018 by an unknown doctor. (Exhibit F "mollica0147-0148)

14|15

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

-------------------------------------------------------------------------------------

Plaintiff asked for a bottom bunk pass so she would not have to climb onto the upper bunk, (which aggravated her pain and worsened her condition) but that was denied by Nurse Bailey.

Dr. Autery (outside consultant) prescribed two prescriptions (in addition to the other recommendations that are "missing" from defendants' exhibits) that would have decreased the size of the fibroids and reduced the bleeding, thereby alleviating some of Plaintiff's pain. The doctors refused to even fill them.

Although Dr. Li claims that he "reviewed and agreed with the recommendation" [from Dr. Autery] (see Doc 47-9 p2), there is no documentation to support that claim in the medical records.

IV.    Plaintiff's Assertions

Plaintiff has alleged sufficient facts in her original and amended complaints to establish knowledge on the part of Defendants Griffin, Bailey, and Li. Both physicians had access to Plaintiff's medical records and never even bothered to read the recommendations from outside gynecologists' Dr. Cox (from 5/2017) and Dr. Autery (from 7/2020). Drs. Griffin and Li ordered several ultrasounds which showed the fibroid was growing and but NEVER provided treatment. Nurse Bailey was given the results of these ultrasounds but made a decision not bring the issues to the doctors' attention. She was also responsible for not obtaining outside doctor recommendations and paperwork, but failed on many occasions, including the pathology report from Dr. Cox performed on 5/04/2017 but not entered into the medical records until 4/20/2020 and the missing 12 pages of Dr. Autery's doctor notes from 7/09/2020.

IV.

During the period of 2016 - 2018, Plaintiff meet with Defendant Griffin, who is actually a trained gynecologist, more than 15 times to discuss her health issues and never obtained treatment. He had the authority to schedule Plaintiff to see outside specialists to evaluate and determine the seriousness of her condition, authorization to provide Plaintiff adequate medical care by making arrangements for her needed procedures and surgeries, and prescribing medication to control the pain and bleeding. He also had the responsibility to actually review the outside specialists' recommendations and proceed to the next phase, which he chose not to do. The only treatment he provided Plaintiff was a prescribed "low dose" birth control pill which did not control the excessive monthly bleeding, formation of blood clots, and severe pain.

Defendant Bailey, a licensed registered nurse, was responsible for seeing inmates after they went on medical trips outside the prison. It is a reasonable inference that she would have been aware of Plaintiff multiple trips to outside specialists. Plaintiff meet with Bailey on at least nine separate occasions specifically related to the fibroid

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A
------------------------------------------------------------------------

issues. The ONLY record of her doing anything for Plaintiff is to deny the bottom bunk pass on 8/01/2020

(see Doc 47 p 12) Bailey could have easily scheduled Plaintiff to see an inside doctor regarding this issue, but chose

not to do her job.

Dr. Li, a trained medical doctor with many years of experience in the medical field, had the authority to

schedule Plaintiff to see outside specialists to evaluate and determine the seriousness of her condition, authorize

to provide Plaintiff adequate medical care by making arrangements for her needed procedures and surgery, and filling

her prescriptions from Dr. Autery. However, Li chose not to provide any treatment. Plaintiff's condition worsened

with the growth of additional fibroids (see Attachment D) and diverticulosis, two hernias, and enlarged lymph nodes

and PTSD.

The Defendants knew of Plaintiff's worsening condition and failed to evaluate or treat her despite their

authority to do so, which is sufficient to state an Eighth Amendment claim. Therefore dismissal under Rule

12(b)(6) is no appropriate.

Also, there is a genuine dispute of fact regarding the medical records provided by Dr. Autery. Defendant Li

relies heavily on the claim that Autery "did not recommend a hysterectomy" in July 2020, when in fact, she did.

(see Affidavit 1)

V.   Conclusion

To show that prison officials acted with deliberate indifference to a serious medical need, a prisoner plaintiff

must allege the following: (1) prisoner suffered a sufficiently serious medical need; (2) to which defendants were

deliberately indifferent' and (3) resulting in an injury. (Goebert v. Lee County, 510 F 3d 1312 (11th Cir 2007).

To satisfy the objective component of serious medical need, a plaintiff must allege that his medical need "has

been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention. (Goebert at 1326)

To show subjective requirement, a prisoner can show that prison officials' (1) had subjective knowledge of

a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. (Youmans v.

Gagnon, 626 F #d 557, 264 (11th Cri 2010))

Conduct that is "more than mere negligence includes: (1) grossly inadequate medical care; (2) a decision to

take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no

treatment at all. (Barnes v. Martin County Sheriff's Dept. 326 F App'x 553; 534-535 (11th Cir 2009))

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

---------------------------------------------------------------------------------

Plaintiff has alleged facts, that if proven true, satisfy all of the elements of deliberate indifference to her medical condition by Defendants Griffin, Li, and Bailey.

Objective Requirements: Fibroids and the related bleeding are a serious medical condition, all defendants had access to Plaintiff's medical records and numerous ultrasounds and were aware of her worsening condition through repeated sick call visits. Plaintiff has suffered injury by additional fibroids and cysts growing in her uterus as well as the pain and suffering that goes with excessive bleeding. She has also been diagnosed with medical issues as a direct result of not receiving adequate medical care from these defendant. Some new diagnoses, such as diverticulosis and PTSD currently have no cure; she will have to be treated for the rest of her life due to the doctors' and nurse's deliberate indifference.

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Bivens conclusion
DATE: 11/16/2023 10:01:26 AM

Subjective Requirements: All defendants had subjective knowledge of the risk to Plaintiff by denying treatment for the fibroid. Dr. Griffin, a gynecologist, and Dr. Li, an internist, went to accredited medical schools; Nurse Bailey is a registered nurse. All have current medical licenses. They chose to disregard the risk to Plaintiff's health simply because she was incarcerated and had no choice in her own medical care. Their conduct is more than negligent based on the grossly inadequate medical care, i.e. a decision to provide a monthly prescription of birth control pills that was far cheaper than surgery. These pills did not shrink the fibroids or alleviate the pain or bleeding; this treatment was so cursory that it amounted to no care at all.

Even a lay person would recognize that fibroids that weigh almost 10 lbs and causes the to uterus to be extended to the size of an 18-week pregnancy cannot be left inside of a person for years. Denying treatment has lead to additional health problems for Plaintiff and this was foreseeable by the Defendants.

In addition, there is a genuine dispute of facts related to both Dr. Lorissa Autery's recommendation for surgery and other diagnostic tests for the 7/09/2022 visit and how/why 12 of the 22 pages of the her records were removed from Plaintiff's FBoP medical records before the filing of Defendants' motions.

Therefore, based on the proceeding information, Plaintiff asks this Honorable court to DENY Defendants' Motion to Dismiss and Motion for Summary Judgment and to GRANT Plaintiff's requests to subpoena** Dr. Lorissa Autery's medical records/doctor notes related to the 7/09/2020 visit and allow Plaintiff to proceed to trial.

Respectfully submitted, this the 16th day of November 2023.

Terri McGuire-Mollica
Reg No. 31860-001
c/o FPC Marianna
P.O. Box 7006
Marianna, FL 32447

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

---------------------------------------------------------------------------

**Plaintiff has already prepared a subpoena and interrogatories for Dr. Autery.  They were submitted to the court in January 2022; however, the court ruled they were "premature."

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Cert of Service BHAM
DATE: 11/16/2023 11:03:58 AM


CERTIFICATE OF SERVICE


I, Terri McGuire-Mullica, certify under penalty of perjury that a true and correct copy

of the MOTION IN OPPOSITION TO DEFENDANT'S MOTIONS FOR DISMISSAL AND

SUMMARY JUDGEMENT was served on the U.S. District Court in Birmingham, AL, via first-class

prepaid U.S. Mail, by placing it in the FPC Marianna Prison Mailbox System, on this

the _16th_ day of November 2023.


Terri McGuire-Mollica
Reg No. 31860-001

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Affidavit 1
DATE: 11/16/2023 09:44:50 AM


County of )           JACKSON

State of )            FLORIDA



                          AFFIDAVIT #1


    I, Terri McGuire-Mollica, am executing this Affidavit as an attachment to Case No. 7:20-cv-01768-SGC McGuire-Mollica v. Griffin, et al., pending in the U.S. District Court in the Northern District of Alabama.

    In support of this Affidavit, I aver the following:

    1.    On 7/09/2020, I had a outside consultation with non-FBoP gynecologist Lorissa Autery, M.D. related to my continued medical issues of uterine fibroids, heavy monthly bleeding, and severe pain. Dr. Autery performed an internal ultrasound, pap smear, blood work, and an internal exam. She determined that I needed a hysterectomy to improve symptoms. We also discussed that fact that due to the size of the uterus and fibroid, the procedure could not be done through my naval; I would need a cut from "hip-bone to hip-bone." We also discussed the recovery and how that would work given that I was housed at a federal prison.

    While I was still at the doctor's office, she showed me the paperwork and told me that she was going to send it to Aliceville. In that paperwork, she had recommended a colonoscopy, mammogram, and hysterectomy. She also prescribed two different drugs to help control the bleeding and shrink the size of the fibroid, neither of which were not filled.

    2.    In September and October 2020, I requested my medical records directly from Dr. Autery. I never received them.

    3.    Administrative Remedy 11 to Central Office was placed in the Aliceville Prison Mailbox on the date the form was signed.

    4.    On 11/27/2018, I was called to health services and told that I had an outside medical trip scheduled for that day. When I told Nurse Knopp that I was bleeding heavily and passing blood clots, she called the physician's office. According to Nurse Knopp, that doctor could not do the necessary internal examination needed for a diagnosis and treatment recommendation while I was bleeding. I was told by Knopp that she would attempt to reschedule the appointment. However, Dr. Griffin had already left and Dr. Li did not start until September 2019, so the rescheduling was delayed. I was told the sign the form so that I would not be on the "out count" for that day.

    I, Terri McGuire-Mollica, certify under penalty of perjury that the foregoing is true and correct to be best of my knowledge, pursuant to 28 U.S.C. section 1746.


11/16/2023                           _Terri McGuire-Mollica_
_____                      _____
Date                                 Terri McGuire-Mollica

TRULINCS  31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

FROM: 31860001
TO:
SUBJECT: Affidavit 2
DATE: 11/16/2023 11:00:13 AM


County )                JACKSON

State)                  FLORIDA


## AFFIDAVIT #2


I, Terri McGuire-Mollica, am executing this Affidavit in response to the Declarations submitted by Richard Griffin, M.D. (Doc 47-10), Xinyu Li, M.D.(47-9), and Sharon Bailey, RN (47-8) for Case No. 7:20-cv-01768-SGC currently pending in the U.S. District Court for the Northern District of Alabama.

In support of this Affidavit, I aver the following:

1.    I suffered from a serious medical need from October 2016 - present.

2.    Defendants were deliberately indifferent to my medical needs from October 2016 - August 2021.

3.    Defendants' deliberate indifference and refusal to treat my serious medical need has resulted in severe injury by (1) growth of additional uterine fibroids, formation of two hernias, and chronic gastritis; (2) diagnosis of additional non-curable medical issues, such as diverticulosis and PTSD; and (3) suffering of severe pain.

4.    All Defendants (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk, and (3) by conduct that was more than mere negligence.

5.    The Defendants (1) provided grossly inadequate medical care; (2) decided to take the easiest [for them] course of treatment; and (3) the medical care provided was so cursory that it amounted to no treatment at all.


Richard Griffin, M.D. (Doc 47-10 Item #4)

1.    From the time that I entered FCI Aliceville in October 2016, I was diagnosed with serious medical issues.

2.    I went to at least 15 sick calls and chronic care visits with Griffin to discuss uterine bleeding and pain issues.

3.    Dr. Griffin ordered several ultrasounds and outside gynecological consultations.

4.    He never discussed the test/diagnosis results or recommendations with me.

5.    The only treatment I received from him was a prescribed cursory low-dose birth control pill to attempt to control the bleeding.  I was given nothing for pain.

6.    Dr. Griffin interfered with the recommendations of Dr. Cox (outside specialist) by not scheduling my surgery.

7.    Dr. Griffin had knowledge of my medical issues, had access to diagnostic tests and recommendations from gynecological specialists, and had authority to provide treatment but never did so.

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

-------------------------------------------------------------------------------

II.  Xinyu Li, M.D. (Doc 47-9 Items #3, #4, #5, #7)

1.  I was already diagnosed with serious medical issues by the time Dr. Li came to Aliceville in 2019.

2.  I met with Dr. Li at least 10 times to discuss my uterine issues.

3.  Dr. Li never provided any treatment to me, except to renew Dr. Griffin's prescription for birth control pills.

4.  Dr. Li has provided no contemporaneous documentation to show how he determined my "uterine symptoms were stable." In fact, my "uterine symptoms" were not stable between 9/2019 and 8/2021, as evidenced by the many doctor visits with Dr. Li during that time, mostly for severe pain and bleeding.

5.  Dr. Li has provided no contemporaneous documentation to show how he determined ultrasounds "showed her uterine fibroids were stable in size" when in fact, an ultrasound performed after she left Aliceville showed the growth of 2 additional fibroids during this same period.

6.  Dr. Li did not review all of Dr. Autery's recommendation and notes.  Dr. Autery recommended a hysterectomy (see Affidavit I).  Dr. Li provided no contemporaneous documentation to support that he "reviewed and agreed with the recommendation."

7.  Dr. Li interfered with the recommendations of Dr. Autery (outside specialist) by not scheduling the surgery or approving the prescriptions to help with bleeding.

8.  Dr. Li had knowledge of my medical issues, access to diagnostic tests and recommendations from outside gynecologist specialists, and had authority to provide treatment, but never did so.

IV.  Sharon Bailey, R.N. (Doc 47-8 Item #7)

1.  Nurse Bailey was already working at Aliceville when I arrived.

2.  She acted as the "head" or "triage" nurse for the facility.

3.  She treated me from October 2016 - 2021.

4.  I meet with her at least 9 separate occasions to discuss heavy bleeding and pain over the court of 5 years.

5.  Referrals to see the FBoP-physician had to go through Nurse Bailey.

6.  She is responsible for obtaining the results of outside medical trips, entering that information into the electronic medical records, and following up on results of biopsies, etc.

7.  During the entire 5 years, Nurse Bailey never once recommended treatment for my symptoms or referred me to one of the providers.

8.  Nurse Bailey denied me a "bottom bunk pass" which would have allowed me to sleep on a lower bunk rather than having to climb a 5' ladder, which exacerbated my symptoms.

9.  On August 11, 2020, Bailey entered untruthful and fabricated information into the federal government's FBoP electronic medical systems stating "inmate refused to go out on several occasions."

10.  Nurse Bailey had the authority to schedule Plaintiff to see an in-house provider but never did so.

I, Terri McGuire-Mollica, certify under penalty of perjury, that the foregoing is true and correct, to the best

TRULINCS 31860001 - MOLLICA, TERRI MCGUIRE - Unit: MNA-X-A

--------------------------------------------------------------------------------

of my knowledge, pursuant to Title 28 U.S.C. section 1746.


\_\_11\_|\_16\_|\_2023\_\_\_

Date


Terri McGuire-Mollica

Exhibit A
1|6

**Bureau of Prisons**
**Health Services**
**Health Problems**

Reg #: 31860-001                    Inmate Name: MOLLICA, TERRI MCGUIRE

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| **Current** | | | | | | |
| Candidal stomatitis | | | | | | |
| 04/05/2022 11:07 EST  Collins, Joseph DDS/CDO | | ICD-10 | B370 | 04/05/2022 | Current | |
| Iron deficiency anemia | | | | | | |
| 10/20/2016 14:16 EST  Griffin, Richard MD/CD | | ICD-10 | D509 | 10/20/2016 | Current | |
| Anemia, unspecified | | | | | | |
| 10/14/2016 16:33 EST  Wordlaw, Lease NP | | ICD-10 | D649 | 10/14/2016 | Current | |
| Hyperlipidemia, unspecified | | | | | | |
| 11/25/2019 14:29 EST  Horton, Shanquail CRNP | | ICD-10 | E785 | 11/25/2019 | Current | |
| Opioid Use Disorder: Moderate | | | | | | |
| 10/15/2018 09:18 EST  De Jesus, Gabriel PsyD | I | DSM-IV | F11. | 10/15/2018 | Current | |
| Major depressive disorder, recurrent | | | | | | |
| 02/23/2021 10:08 EST  Hunter, Shelli CRNP Mid-Level Practitioner | | ICD-10 | F339 | 02/23/2021 | Current | |
| Anxiety disorder | | | | | | |
| 10/11/2016 11:41 EST  Wordlaw, Lease NP | | ICD-10 | F419 | 10/11/2016 | Current | |
| Posttraumatic Stress Disorder | | | | | | |
| 07/26/2022 11:14 EST  Byrd, Janet PsyD | I | DSM-IV | F43.10 | 07/26/2022 | Current | |
| Mental disorder, not otherwise specified | | | | | | |
| 10/11/2016 11:41 EST  Wordlaw, Lease NP | | ICD-10 | F99 | 10/11/2016 | Current | |
| Migraine | | | | | | |
| 10/24/2016 15:52 EST  Griffin, Richard MD/CD | | ICD-10 | G43909 | 10/24/2016 | Current | |
| Age-related cataract | | | | | | |
| 12/22/2021 10:06 EST  Hamilton, Richard O.D. | | ICD-10 | H259 | 12/22/2021 | Current | |
| Myopia | | | | | | |
| 11/27/2017 10:03 EST  Coshatt, Randy S Optometrist | | ICD-10 | H5210 | 11/27/2017 | Current | |
| Otitis media | | | | | | |

Attachment A
1|6

Reg #: 31860-001                Inmate Name: MOLLICA, TERRI MCGUIRE

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 06/08/2022 15:10 EST  Caldwell, Annette ARNP | | ICD-10 | H6690 | 06/08/2022 | Current | |
| Essential (primary) hypertension | | | | | | |
| 07/11/2019 09:00 EST  Williamson, Jim CRNP | | ICD-10 | I10 | 07/11/2019 | Current | |
| Asthma | | | | | | |
| 06/16/2021 12:34 EST  Li, Xinyu (MAT) MD/CD | | ICD-10 | J45909 | 06/16/2021 | Current | |
| Dental caries on smooth surface penetrating into pulp | | | | | | |
| 04/10/2017 11:17 EST  Lockhart, J. DMD | | ICD-10 | K0263 | 04/10/2017 | Current | |
| Dental caries | | | | | | |
| 10/19/2022 09:27 EST  Collins, Joseph DDS/CDO | | ICD-10 | K029 | 10/19/2022 | Current | |
| Disorder of teeth and supporting structures, unspecified | | | | | | |
| 02/26/2019 12:16 EST  Lockhart, J. DMD | | ICD-10 | K089 | 02/26/2019 | Current | |
| Diverticulosis of intestine | | | | | | |
| 11/29/2022 14:39 EST  Caldwell, Annette ARNP | | ICD-10 | K5790 | 11/29/2022 | Current | |
| Atopic dermatitis, unspecified | | | | | | |
| 12/09/2022 09:48 EST  Archer, Kendes (MAT) MD, CD | | ICD-10 | L209 | 12/09/2022 | Current | |
| Noninflammatory disorder of uterus, unspecified | | | | | | |
| 10/20/2016 14:37 EST  Griffin, Richard MD/CD | | ICD-10 | N859 | 10/20/2016 | Current | |
| leiomyomatous, uterus 16 weeks | | | | | | |
| Abnormal uterine and vaginal bleeding, unspecified | | | | | | |
| 10/20/2016 14:16 EST  Griffin, Richard MD/CD | | ICD-10 | N939 | 10/20/2016 | Current | |
| Abnormal results of function studies of organs and systems | | | | | | |
| 06/19/2018 16:22 EST  Griffin, Richard MD/CD | | ICD-10 | R948 | 06/19/2018 | Current | |
| mammogram additional view 5.2018 BIRADS 0 | | | | | | |
| Head, Contusion | | | | | | |
| 11/04/2021 09:12 EST  Caldwell, Annette ARNP | | ICD-10 | S0093X | 11/04/2021 | Current | |
| Neck musc/fasc/tendon injury | | | | | | |
| 03/28/2023 13:57 EST  Caldwell, Annette ARNP | | ICD-10 | S169XX | 03/28/2023 | Current | |
| Falling, jumping or pushed from a high place, undetermined intent | | | | | | |
| 11/04/2021 09:12 EST  Caldwell, Annette ARNP | | ICD-10 | Y30XXX | 11/04/2021 | Current | |
| fell from chair while making bed | | | | | | |

Encounter for exam for admission to prison without abnormal findings

Reg #: 31860-001                 Inmate Name:  MOLLICA, TERRI MCGUIRE

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| 10/11/2016 11:41 EST  Wordlaw, Lease NP | | ICD-10 | Z022 | 10/11/2016 | Current | |
| Coronavirus COVID-19 test negative | | | | | | |
| 10/05/2021 11:26 EST  Rankins, Monica RN/ID/IOP | | ICD-10 | Z03818- | 09/30/2021 | Current | |

## Resolved

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Gingivitis | | | | | | |
| 05/11/2022 11:23 EST  Collins, Joseph DDS/CDO | | ICD-10 | K0510 | 05/11/2022 | Resolved | 05/11/2022 |
| Confirmed case COVID-19 | | | | | | |
| 08/24/2023 11:07 EST  Floyd, Brett QIIC RN | | ICD-10 | U07.1 | 08/01/2023 | Resolved | 08/24/2023 |
| 08/01/2023 10:54 EST  Caldwell, Annette ARNP | | ICD-10 | U07.1 | 08/01/2023 | Current | |
| Quarantine - asymptomatic person in quarantine | | | | | | |
| 10/22/2021 17:01 EST  Caldwell, Annette ARNP | | ICD-10 | Z0489-q | 10/22/2021 | Resolved | 10/22/2021 |
| 10/08/2021 13:35 EST  Caldwell, Annette ARNP | | ICD-10 | Z0489-q | 10/07/2021 | Current | |
| 09/03/2021 08:28 EST  Rankins, Monica RN/ID/IOP | | ICD-10 | Z0489-q | 09/02/2021 | Current | |

**Total:** 31

Page 1 of 2

Patient Name: TERRI MOLLICA
Patient DOB: 5/14/1966
Patient MRN: 31860-001

Sound Diagnostics of NW FL
1414 Clayton Road
Chipley FL 32428



**FPC Marianna**
Health Services Unit
Marianna, FL

# Procedure Report

Location: **Sound Diagnostics of NW FL**     MRN: **31860-001**     Date of Service: **Aug 16, 2022**
Patient Name: **MOLLICA, TERRI**     DOB: **May 14, 1966**
Interpreting Physician: **Sunil Kini, MD**     Gender: **F**
Indication: **Left Groin Hernia**     Age: **56**

## Physician Review

Findings: Survey of left groin soft tissue demonstrates no evidence of coarse calcifications or cysts. There is no evidence of drainable fluid collections. There is 1.9 x 1 x 1.8 cm inhomogeneous area in subcutaneous soft tissues, possible inguinal hernia. There are 2.3 x 1 x 1.7 cm and 2.7 x 0.6 x 1.2 cm lymph nodes in the left groin.
Correlation with clinical history and physical exam, and, if indicated, further evaluation is recommended. This examination should not preclude further evaluation of suspicious masses or other findings.

Conclusions: 1. Inhomogeneous area in left groin as described, possible inguinal hernia.

2. Non-specific left groin lymph nodes.

3. Correlation with CT scan is recommended.

**Electronically signed Sunil Kini, MD 8/23/22 5:23 AM**

**Annette Caldwell, APRN**
Mid-Level Provider
FCI Marianna

9/5/2022

A. 5/6

Mar. 21. 2023   9:41AM                                              NO. 3010   r. 10

## Jackson Hospital
4250 Hospital Drive, Marianna, FL 32446 - 850-526-2200

Patient Name: TERRI MOLLICA                          DOB: 05/14/1966
MRN: 211007                                          Account #: 1648262
Note Type: Operative Note        *31820.00!*

Current Date: 03/16/2023
Current Time: 11:40

PROCEDURE DATE:    03/16/2023

SURGEON: VECHAI ARUNAKUL, MD

ASSISTANT: None

PREOPERATIVE DIAGNOSIS:    FIRST DEGREE RELATIVE WITH COLON CANCER
HEME+ STOOL

POSTOPERATIVE DIAGNOSIS:
1) HIATAL HERNIA
2) DIVERTICULOSIS
3) POOR BOWEL PREPARATION
4) RECTAL POLYP
5) IRRITATED INTERNAL HEMORRHOIDS
6) EXTERNAL HEMORRHOIDS

PROCEDURES PERFORMED:
1) ESOPHAGOGASTRODUODENOSCOPY WITH ANTRAL, DUODENAL BULB
BIOPSIES AND GE JUNCTION BIOPSIES

2) COLONOSCOPY WITH RECTAL POLYPECTOMY AND BIOPSY OF ANAL CANAL

ANESTHESIA:MAC

ESTIMATED BLOOD LOSS: < 5 mLs

SPECIMEN:                                  *Annette Caldwell, APRN*
1) DUODENAL BULB                           *Mid-Level Provider*
2) ANTRUM                                  *FCI Marianna*
3) RECTAL POLYP
4) ANAL CANAL BIOPSY/INTERNAL HEMORRHOID COMPLEX    *ACaldwell, APRN*
                                                    *4/25/2023*
COMPLICATIONS: None

DESCRIPTION OF PROCEDURE: The nurse conducted a time out. The patient's identification,
procedure, and diagnosis were confirmed. After adequate sedation, a mouthpiece was placed in
the patient's mouth. The endoscope was passed through the bite block into the oropharynx. The
esophagus was intubated. The endoscope was advanced into the stomach. The stomach was then
distended with air. The antrum was unremarkable. The scope was then retroflexed. No hiatal
hernia was noted. The scope was placed back into neutral position and the pylorus intubated. The
duodenal bulb was normal in appearance. The first and second portions of the duodenum were
normal. Biopsies of the duodenal bulb and antrum were taken with the forceps. The scope was
pulled back to the level of the gastroesophageal junction. Biopsies of the junction were taken with
the forceps. The scope was used to desufflate the stomach. The esophageal mucosa was normal.
The scope was removed.

Electronically signed by: VECHAI ARUNAKUL, MD, 03/16/2023 12:17 CDT                    Page 1 of 2

mar. 21. 2023  9:42AM                                    No. 5V10   P.  10

A - 6/6

3/8/60.001

# KETCHUM, WOOD & BURGERT PATHOLOGY ASSOCIATES
1899 EIDER COURT • P.O. BOX 14389 TALLAHASSEE, FL 32317
PHONE (850) 878-5143    TOLL FREE (888) 878-5143    FAX (850) 219-7692
ERIN CARLQUIST, M.D. - MEDICAL DIRECTOR

## SURGICAL PATHOLOGY REPORT

| | | | |
|---|---|---|---|
| PATH #:  J23-440 | PATIENT: MOLLICA, TERRI | | |
| SERVICE:  03/16/2023 | DOB:  6/14/1966  (56) | SEX: F | PT. ID: 1848262 |
| RECEIVED:  03/16/2023 | PROVIDER: VECHAI ARUNAKUL, M.D. | | 1-850-526-2200 |
| REPORTED:  03/17/2023 | LOCATION:  JACKSON HOSPITAL | | |

Copies sent to:  -- JH LAB, --
VECHAI ARUNAKUL, M.D.

CLINICAL DATA:   1-8. OTHER SPECIFIED SYMPTOMS AND SIGNS INVOLVING THE DIGESTIVE SYSTEM AND
ABDOMEN, OTHER FECAL ABNORMALITIES, FAMILY HISTORY OF MALIGNANT NEOPLASM
OF DIGESTIVE ORGANS, IRON DEFICIENCY ANEMIA, UNSPECIFIED
5. POLYP

DIAGNOSIS:       1 - BIOPSY, DUODENAL BULB:
                        CHRONIC DUODENITIS WITH GASTRIC METAPLASIA CONSISTENT WITH
                        PEPTIC DUODENITIS.
                        NO PARASITES, GRANULOMA OR FEATURES OF SPRUE SEEN.
                        NO DYSPLASIA OR MALIGNANCY IDENTIFIED.
                 2 - BIOPSY, GASTRIC ANTRUM:
                        CHRONIC GASTRITIS, INACTIVE.
                        NEGATIVE FOR HELICOBACTER-LIKE ORGANISMS USING A DIFF-QUICK STAIN.
                        NO INTESTINAL METAPLASIA, DYSPLASIA OR MALIGNANCY IDENTIFIED.
                 3 - BIOPSY, GE JUNCTION:
                        ADMIXED BENIGN GASTRIC MUCOSA WITH BENIGN SQUAMOUS
                        MUCOSA.
                        NO INTESTINAL METAPLASIA, DYSPLASIA OR MALIGNANCY IDENTIFIED.

                 4 - BIOPSY, TERMINAL ILEUM:
                        FRAGMENTS OF BENIGN SMALL BOWEL MUCOSA WITH NO DIAGNOSTIC
                        CHANGE.
                        NO ACTIVE INFLAMMATION, GRANULOMA OR CRYPT DISTORTION SEEN.
                        NO DYSPLASIA OR MALIGNANCY IDENTIFIED.
                 5 - POLYPECTOMY, RECTAL POLYP:
                        HYPERPLASTIC POLYP WITH EDEMA AND SURFACE EROSION.
                 6 - BIOPSY, ANAL CANAL:
                        BENIGN SQUAMOUS MUCOSA.
                        NO DYSPLASIA OR MALIGNANCY IDENTIFIED.

PAGE: 1                                    ORIGINAL

VECHAI  ARUNAKUL, M.D.
JACKSON HOSPITAL
4250 HOSPITAL DRIVE
MARIANNA, FL  32446

*Attachment B*
*1/2*

# SPARKS&FAVOR, P.C.

*Jimmy M. Sparks, M.D.    Cecilia M. Stradtman, M.D.*

*Judith K. Favor, M.D.    Wendy R. Gregory, M.D.*

*Sarah F. Whitehead, M.D.*

Mr. Mollica,

I have reviewed all the records you sent. She appears to have a long history of abnormal uterine bleeding due to large fibroid(s). Her initial exam in 2017 shows a large fundal fibroid of 13cm and the recommendation at that time is to proceed with a total abdominal hysterectomy and bilateral salpingo-oophorectomy. I agree with this recommendation. I do not see a medical reason no hysterectomy was done before now. However, she has been evaluated in several locations over the years. Her visits have been in both Alabama and Florida with different physicians. The absence of continuity could have contributed to the delay in surgery.

After reviewing and comparing the imaging reports, it does not appear her fibroid(s) have grown. Of note, one ultrasound done in 2022 noted 2 fibroids 3.2cm and 3.4cm. However, the overall size of the uterus is not significantly different. It is unclear from the records if these are new fibroids or not. Fibroids do not need to be biopsied. If fibroids are noted to be increasing in size, they are generally removed. On the most recent exam and imaging in 3/2023, her ovaries also appear normal. Follicular cysts found in the ovaries (noted on her left ovary), can be a normal finding. Although her bleeding has improved and her fibroid is stable in size, I still agree with the most recent recommendation to proceed with hysterectomy and bilateral salpingo-oophorectomy if she has fully recovered from Covid and pneumonia. Fibroids can cause pelvic pressure and discomfort in addition to irregular menses. In the most recent OB/GYN evaluation, she reports pelvis pressure. The large size of the uterus and fibroid is likely causing these symptoms. Fibroids are unlikely to cause mucus or blood in the stool. In regard to a hiatal hernia and diverticulosis, fibroids would not be a causative factor. If she can have the surgery while residing with the bureau of prison system, then release is not necessary. If she is not able to have this surgery while residing there, then she may benefit from release to proceed with the recommended surgery for definitive treatment. If surgery is not an option, Lupron could be considered in an attempt to decrease the size of the fibroids. This option is less likely to significantly improve her symptoms of pelvic pressure since it would not decrease the size of the fibroids enough. If she does not have surgery, then regular monitoring of the fibroid size is necessary. The presence of fibroids is not expected to represent an imminent risk to her health but the large size is contributing to her symptoms and does impact her comfort on a daily _____ In comparison to the opinion/case of United States v. Bardell, I do not see evidence of

# SPARKS&FAVOR, P.C.

I have reviewed the patient's weight documented in the medical visits. In 2017, her weight was
140 pounds, in 2022 145 pounds, and in 3/2023 137 pounds. Per the patient, her current weight
is 119 pounds. It would be unlikely that fibroids remaining stable in size would cause weight
loss. Also, per her recent CT scan, there is no finding of an inguinal hernia.

*Jimmy M. Sparks, M.D.    Cecilia M. Strudtman, M.D.*
*Judith K. Favor, M.D.    Wendy R. Gregory, M.D.*
*Sarah F. Whitehead, M.D.*

Please let me know if you have any further questions.

Thank you,

Wendy Gregory, M.D.

*Attachment C*

## 12. **RESPONSE TIME §542.18**

If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level.  Staff shall inform the inmate of this extension in writing.  Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

progstat                                        1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Patient Name: TERRI MOLLICA
Patient DOB: 5/14/1966
Patient MRN: 31860-001

Page 1 of 2

*New Fibroid Growth*

Sound Diagnostics of NW FL
1414 Clayton Road
Chipley, FL 32428

FPC Marianna
Health Services Unit
Marianna, FL



# Pelvic Ultrasound

Location: **Sound Diagnostics of NW FL**          MRN: **31860-001**          Date of Service: **Nov 21, 2022**
Patient Name: **MOLLICA, TERRI**          DOB: **May 14, 1966**
Interpreting Physician: **Sunil Kini, MD**          Gender: **F**
Indication: **Fibroids**          Age: **56**

## Technique

Transverse, sagittal and doppler imaging was performed with a curvilinear transducer through a physiologically distended bladder.

## Study Data

G: 3          P: 3
Uterus: L: **15.33 cm** AP: **8.29 cm** TR: **9.67 cm** Vol: **642.89 cc**
Right Ovary: L: **3.67 cm**   AP: **3.34 cm**
Left Ovary: L: **4.14 cm**   AP: **1.64 cm** TR: **4.32 cm** Vol: **15.35 cc**
Endo Thickness: **3.44 mm**

## Physician Review

### Findings

Findings: Transabdominal ultrasound was performed.
No definite abnormality is seen in visualized bladder. There is no evidence of intraluminal stones.

Right/Left Ovaries: Right ovary measures about 3.7 cm in largest dimension. There is no evidence of abnormal adnexal fluid collections. Left ovary measures about 4.3 cm in largest dimension.

Uterus: Uterus measures approximately 15.3 x 8.3 x 9.7 cm. There are 3.4 x 2.5 x 4.1 cm and 3.2 x 2.7 x 3.8 cm fibroids in the uterus. Endometrium measures about 3 mm in double wall anteroposterior thickness. Visualization of uterus and adnexa is slightly limited by bladder distension and gas in surrounding bowel. There is no significant free fluid noted in visualized pelvis.
If further evaluation of pelvis is clinically necessary, transvaginal ultrasound can be considered as it does not depend on adequate bladder distension and often is less affected by bowel gas.

Conclusions: 1. Enlarged uterus with fibroids.

Annette Caldwell, APRN
Mid-Level Provider
FCI Marianna
*[signature] 12/3/22*

**Electronically signed Sunil Kini, MD 11/22/22 5:19 PM**

Terri McGuire #31860-001
Federal Prison Camp
P.O. Box 7006
Marianna FL 32447



SECURITY
UNITED STATES NORTHERN DISTRICT OF ALABAMA
NOV 20 2023

Clerk of Court

U.S. Courthouse

1729   5th   Avenue North

Birmingham   AL  35203-2040