# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| TERRI MCGUIRE-MOLLICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cv-01768-SGC |
| | ) | |
| RICHARD GRIFFIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Terri McGuire-Mollica, filed a *pro se* amended complaint under

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging defendants

Richard Griffin, Xinyu Li, and Sharon Bailey violated her Eighth Amendment rights

under the Constitution of the United States. (Doc. 18).[2] Presently pending are four

motions: (1) the defendants' motion for judgment on the pleadings (Doc. 67); (2) the

plaintiff's addendum to her pending claim (Doc. 70), which the court interprets as a

motion to amend the complaint to add a claim under *Loper Bright Enterprises v.*

*Raimondo*, 603 U.S. 369 (2024) (3) the plaintiff's motion to transfer a pending claim

to state court (Doc. 71); and (4) the plaintiff's motion for sanctions under Federal

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 36).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

Rule of Civil Procedure 11 and Alabama Rule of Professional Conduct 3.3 (Doc. 72). These motions are fully briefed and ripe for adjudication.[3] (Docs. 69, 73, 79, 80). For the reasons set forth below, the court will grant the defendants' motion for judgment on the pleadings and deny the plaintiff's motions to amend her complaint, transfer her claim to state court, and impose sanctions.

## I.  Procedural History

The plaintiff filed this action in November 2020. (Doc. 1). In June 2022, after reviewing the complaint under 28 U.S.C. § 1915(A), the undersigned recommended (1) allowing the plaintiff's Eighth Amendment claim relating to a uterine cyst to proceed, provided she file an amended complaint and (2) dismissing without prejudice all remaining claims and defendants, including claims brought under the Federal Torts Claim Act, 28 U.S.C. §§ 2671-2680. (Doc. 13). The plaintiff objected to the Report and Recommendation and included in that objection a proposed amended complaint. (Doc. 16). The presiding district judge adopted the Report and Recommendation in August 2020 and directed that the amended complaint be filed separately. (Doc. 17).

In October 2022, the defendants were ordered to appear and file a special report addressing the plaintiff's factual allegations. (Doc. 24). The defendants were

---

[3] As explained in more detail below, the court did not request briefing on the plaintiff's motion to amend.

2

advised that, if appropriate, their special report would be considered as a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure*. (*Id.* at 7). The parties then consented to magistrate judge jurisdiction. (Doc. 36).

In October 2023, the defendants filed their special report, including a motion that sought (1) to dismiss the amended complaint for failure to exhaust administrative remedies and (2) summary judgment on the merits of the plaintiff's claim. (Doc. 47). Following the parties' briefing, on March 8, 2024, the court granted the defendants' motion to dismiss, concluding the plaintiff failed to exhaust her administrative remedies. (Docs. 57, 58). The plaintiff appealed, and in September 2025, the Eleventh Circuit vacated this court's dismissal order and remanded the action for further proceedings. (Docs. 62, 65).

In November 2025, the defendants moved for judgment on the pleadings, after which the court entered a briefing schedule. (Docs. 67, 68). The plaintiff objected to the defendants' motion and filed an "Addendum to Pending Bivens Claim." (Docs. 69, 70). The defendants timely replied. (Doc. 73). The plaintiff has also filed a motion to transfer her pending claim to state court, as well as a motion for sanctions against the defendants. (Docs. 71, 72).

## II. Motion for Judgment on the Pleadings

Citing *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024), the defendants argue they are entitled to judgment on the plaintiff's *Bivens* claim because (1) her claim

3

presents a new context and (2) the existence of the Bureau of Prisons' ("BOP") administrative remedy program counsels against extending a *Bivens* remedy. (Doc. 67). In response, the plaintiff contends the facts in this case are distinguishable from those in *Johnson*.

## A. Standard of Review

A Rule 12(c) motion for judgment on the pleadings is governed by the same standard applicable to a Rule 12(b)(6) motion to dismiss. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Under this standard, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive the pleading stage, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice, *Iqbal*, 556 U.S. at 678.

## B. Alleged Facts

The amended complaint alleges the plaintiff was diagnosed in October 2016 with a 6cm uterine fibroid, which "outside physician" Dr. Cox recommended be removed laparoscopically. (Doc. 18 at 8). The defendants were aware of this condition and Dr. Cox's surgical recommendation, but they refused to treat the plaintiff's bleeding and pain and ignored and/or interfered with Dr. Cox's recommendation. (*Id.*). The fibroid was not removed, and by July 2020, it had grown to 21cm and weighed between 15 and 20 pounds. (*Id.*). Now, the plaintiff's uterus must be removed in an invasive surgery. (*Id.*). The delay in and/or refusal to provide treatment caused chronic anemia, heavy uterine bleeding, vaginal prolapse, a hernia, colon/rectal bleeding, anxiety, and depression. (*Id.* at 9). In addition, Bailey falsified multiple entries in the plaintiff's medical file to indicate she refused medical treatment on several occasions. (*Id.* at 5).

## C. Analysis

In *Bivens*, the Supreme Court recognized an implied cause of action for monetary damages to redress a search and seizure by federal officers in violation of the Fourth Amendment. 403 U.S. at 397. The Court later expanded the *Bivens* remedy to provide monetary damages against federal defendants in two other contexts: unlawful gender discrimination in violation of the Fifth Amendment Due Process Clause and cruel and unusual punishment by federal prison officials in

violation of the Eighth Amendment for failure to provide adequate medical care. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

Following *Carlson*, the Court declined to further expand the *Bivens* remedy to redress additional constitutional violations. Relying on separation of powers principles, the Court has refused to imply damages claims outside the three foregoing contexts, reasoning Congress, not the courts, should decide whether to provide a damages remedy. *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Although *Bivens, Davis*, and *Carlson* remain valid in their own contexts, the Court has repeatedly cautioned that expanding the *Bivens* remedy any further is now a "disfavored" judicial activity. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Indeed, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *Ziglar*, 582 U.S. at 131 ("These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

In 2017, the Court described a two-pronged test to determine whether a *Bivens* claim may proceed. *See generally Ziglar*, 582 U.S. 120. The first prong asks whether the claim presents *Bivens* in a "new context" or involves a "new category" of defendants. *Id.* at 138; *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). If a plaintiff's claim differs "in a meaningful way from previous *Bivens* cases decided by [the]

Court, then the context is new." *Ziglar*, 582 U.S. at 139. Next, if a case does present a new context, courts must evaluate whether "special factors" militate against extending *Bivens*. *Id.* at 140. The relevant inquiry is whether Congress, and not the courts, is at least arguably better equipped to determine the propriety of creating a new damages action. *Id.*

Just five years after *Ziglar*, the Court further modified the two-step *Bivens* expansion framework by explaining the "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). Under this analysis, the district court "must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* at 493 (quotations omitted). However, *Egbert* did not overrule *Ziglar* or *Bivens*, and both *Davis* and *Carlson* remain good law. *See id.* at 501.

In 2024, the Eleventh Circuit issued its opinion in *Johnson*. 119 F.4th 840. There, the plaintiff was both a federal pretrial detainee and a post-conviction prisoner when the relevant events occurred. He asserted several claims, including deliberate indifference to medical needs based on the denial of treatment for a fractured hand and refusal to provide a prescribed liquid diet after he suffered a broken jaw. The defendants moved for summary judgment, arguing in part that the

plaintiff's *Bivens* claims were not cognizable because they presented a new context and special factors counseled against extending *Bivens* to that new context. The district court agreed with the defendants and entered summary judgment in their favor.

On appeal, the Eleventh Circuit affirmed the trial court's entry of summary judgment. *Id.* at 862. Despite acknowledging "significant parallels" between Johnson's claims and the deliberate indifference claims in *Carlson*, the Eleventh Circuit found Johnson presented a new *Bivens* context for three reasons, any one of which was independently sufficient to trigger *Egbert's* special factors analysis. *Id.* at 857-58. First, the Eleventh Circuit noted some of Johnson's deliberate indifference claims arose under the Fifth Amendment, not the Eighth Amendment as in *Carlson*. *Id.* Nevertheless, "[w]hile Johnson's other deliberate indifference claims [arose] under the Eighth Amendment as the claim did in *Carlson*, that [was] not enough to prevent the context of those claims from being a new one for *Bivens* purposes" because the *Carlson* court did not consider alternative remedies available to the plaintiff. *Id.* at 858.

Next, the court found the existence of the BOP's administrative grievance remedy—an alternative remedy not considered in *Carlson*—necessarily meant the plaintiff in *Johnson* presented a new *Bivens* context. *Id.* at 858-59. Finally, the court found *Johnson* presented a new *Bivens* context because the plaintiff's claims were

based on lack of treatment for non-lethal physical injuries rather than the lethal respiratory distress at issue in *Carlson*. *Id.* at 859 ("The severity, type, and treatment of Johnson's injuries differ significantly from those of the prisoner in *Carlson*.").

*Johnson* is binding here. Under *Johnson*, the plaintiff's claim presents a new *Bivens* context for two independently sufficient reasons. First, her claim presents a new *Bivens* context because her injuries differ in severity, type, and treatment from the injuries underlying *Carlson*. *See id*. Her claim arises from the delay and/or denial of medical care which—although it caused pain and suffering—was not fatal. Further, *Carlson* involved improper medical treatment for asthma, while the plaintiff's claim involves alleged improper treatment for a uterine fibroid. Second, the existence of the BOP's administrative remedy program also means this claim present a new *Bivens* context. *Id.* at 858-59; *see Ellis v. Fed. Bureau of Prisons*, No. 23-0231-MHH-NAD, 2024 WL 4684393, at \*5 (N.D. Ala. Oct. 7, 2024), *R&R adopted*, 2024 WL 4683282 (N.D. Ala. Nov. 5, 2024).

Because McGuire-Mollica presents a new *Bivens* context, the court must proceed to the special factors analysis articulated in *Egbert*: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. Under this analysis, the district court "must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* at 493.

Applying the *Egbert* special factors test necessarily forecloses the *Bivens* remedy here. *See Duncan v. United States*, No. 1:20-cv-1685-SEG, 2023 WL 2370479, at *5 (N.D. Ga. Feb. 27, 2023) ("It is not entirely clear how, practically speaking, a district court is meant to apply the *Egbert* question, given that the latter question, as stated, would not appear to allow for any answer other than 'no.'"); *see also Egbert*, 596 U.S. at 503 (Gorsuch, J., concurring) ("[T]o ask the question is to answer it.").

The plaintiff presents five arguments in her objection to the defendants' motion. First, she asserts her condition will be terminal without proper care, and unlike the *Carlson* plaintiff, she has never received treatment for her condition. Second, she contends *Johnson* was predicated on the Fifth Amendment, and her claim rests on the Eighth Amendment like the one in *Carlson*. Next, she argues the *Johnson* plaintiff did not complete the administrative remedy process, while she did and was never provided treatment. Fourth, she claims *Loper Bright* requires the court to determine whether the BOP acted in accordance with its administrative remedy procedure. Finally, she states that in filing this lawsuit she was following the directions of the judge in her criminal case. In light of *Johnson*, however, these arguments do not save the plaintiff's claim.

First, as discussed above, the nature of the plaintiff's condition (a uterine fibroid) is sufficiently different in type, severity, and treatment than the fatal respiratory injuries at issue in *Carlson*. Second, while some of the claims in *Johnson*

were predicated on the Fifth Amendment, others rested on the Eighth Amendment. Nevertheless, the court found the Eighth Amendment claims were not sufficiently analogous to *Carlson*. Thus, the fact that the plaintiff's claim arises only under the Eighth Amendment does not defeat the defendants' motion.

Third, the plaintiff's completion of the administrative remedy process is not the issue because *Johnson* counsels that "[t]he alternative remedy question is a general one, not a specific one; a macro focus, not a micro focus." *Johnson*, 119 F.4th at 860.

> That means it does not matter whether [] the administrative remedy program adequately addressed [the plaintiff's] complaints. . . . The only consideration is whether there is a remedial process in place that is intended to redress the kind of harm faced by those like the plaintiff. And there is one here. The BOP's administrative remedy program.

*Id.* at 860. Thus, the existence of the BOP's administrative remedy program means the claim here presents a new context, even though the plaintiff obtained no relief through that process.

Fourth, *Loper Bright* does not provide this court an avenue to address the plaintiff's claim. *Loper Bright* overruled *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required courts to defer to an agency's interpretation of an ambiguous statute administered by that agency, even when the reviewing court interpreted the statute differently. 603 U.S. at 413. The plaintiff has not asked this court to determine whether the BOP has acted within its

11

statutory authority, and there is no allegation of an ambiguous statute. Instead, she contends the individual defendants violated her rights under the Eighth Amendment. Accordingly, *Loper Bright* is not implicated.

Finally, the court understands the plaintiff may have filed this action at the suggestion of the judge who presided over her criminal trial. As the plaintiff acknowledges, that suggestion was made in 2020. The law governing *Bivens* claims has changed significantly since then, and this court is bound by the Eleventh Circuit's controlling opinion in *Johnson*. Accordingly, the defendants' motion for judgment on the pleadings will be granted.

## III.    Motion to Amend

Along with her opposition to the defendants' motion for judgment on the pleadings, the plaintiff filed an "Addendum to Pending Bivens claim" in which she seeks to add a claim that the defendants violated 18 U.S.C. § 4042(a)(2)[4] and Bureau of Prisons ("BOP") Program Statement 6031.04 on Patient Care.[5] (Doc. 70). She argues that under *Loper Bright*, this court has the authority to decide whether an agency, through its employees, is acting within its statutory authority. Although McGuire-Mollica's addendum was not docketed as a motion, the court understands

---

[4] Section 4042(a)(2) states that the Bureau of Prisons shall "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . ."

[5] The purpose and scope of this program statement is to "effectively deliver medically necessary health care to inmates."

her submission as a request to amend the complaint. Because the court's review indicates this motion is due to be denied as futile, it has not directed the defendants to respond.

When, as here, a plaintiff may no longer amend her complaint as a matter of right, Federal Rule of Civil Procedure 15(a)(2) permits amendment only with the opposing party's written consent or leave of court. The motion to amend does not indicate the defendants have consented to the amendment. Given the defendants' pending motion for judgment on the pleadings, the court assumes they do not consent to an amendment. Accordingly, the plaintiff may amend her complaint only with leave of court.

"The court should freely give leave [for a party to amend its pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "[a] district court may deny leave to amend where the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." *McDaniel v. Mylan, Inc.*, No. 7:19-cv-00209-LSC, 2019 WL 11638407, at *4 (N.D. Ala. Dec. 16, 2019) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (additional citation and quotation marks omitted)).

The proposed amendment would be futile for two reasons. First, the statute and program statement the plaintiff cites do not confer a private cause of action.

13

Section 4042 "does not provide a private cause of action for damages against BOP officials in their individual capacities." *Moore v. Lapin*, No. 3:08-cv-344/MCR/EMT, 2009 WL 3336082, at *4 (N.D. Fla. Oct. 15, 2009); *see also Harper v. Williford*, 96 F.3d 1526, 1527 (D.C. Cir. 1996) ("We join our sister circuits in concluding that section 4042 does not create a private right of action against federal officials."); *Chinchello v. Fenton*, 805 F.2d 126, 134 (3d Cir. 1986) (section 4042 was not "intended to assign any specific responsibility to the Director of the [BOP] personally or to create a private right of action against him in favor of the inmates under his indirect care"). Similarly, an agency's noncompliance with a program statement, which is an internal agency guideline that an agency may change at will, is not a violation of federal constitutional or statutory law. *See Cawthorn v. Hemingway*, No. 2:15-cv-0429-MHT, 2016 WL 2600713, at *2 (M.D. Ala. Feb. 24, 2016) (collecting cases and concluding "the BOP's alleged failure to comply with its program statement does not amount to a violation of a constitutional or statutory right enjoyed by Plaintiff."), *R&R adopted*, 2016 WL 3287365 (M.D. Ala. June 7, 2016).

Second, *Loper Bright* does not confer on the plaintiff a private cause of action or give this court unlimited freedom to review actions of agencies. As discussed above, *Loper Bright* overruled the *Chevron* doctrine and thereby allows courts to independently interpret ambiguous statutes. Because the plaintiff's claim does not

challenge any statute as ambiguous, *Loper Bright* is not implicated. Accordingly, the plaintiff's proposed amendment would be futile, and her motion to amend her complaint will be denied.

## IV.    Motion to Transfer

The plaintiff asks the court to transfer this action to state court as a malpractice suit against the defendants. (Doc. 71 at 2). Though her argument is not entirely clear, it appears she contends this court lacks jurisdiction over her case because the defendants were not acting "under the color of law or statutes." (*Id.*). She cites 42 U.S.C. § 1983, alleging it applies to "any person, who under 'color of any statute, ordinance, regulation, custom, or usage, or any *Federal*, State or Territory or the District of Columbia deprives another of her constitutional or other federal rights.'" (Doc. 71 (emphasis added)). This is not the text of § 1983: "federal" does not appear in the text of the statute.

In any event, this court does not lack jurisdiction over the plaintiff's claim. She has alleged the defendants, acting in their capacity as federal agents, violated her constitutional rights. This clearly implicates a federal question under 28 U.S.C. § 1331, which gives the district court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Further, the plaintiff does not cite, and this court is unaware of, any authority or mechanism by which this court can transfer a case originally filed in federal court

15

to state court. The plaintiff chose to file this action in this court. (Doc. 1). As the plaintiff, it was her right to choose between the forums available to her. Further, she has at all times alleged the defendants violated her constitutional rights; she has not stated a claim for medical malpractice. In other words, even if there exists a mechanism by which this court can transfer a case to state court, there is no medical malpractice claim to transfer. Accordingly, the motion to transfer will be denied.

## V. Motion for Sanctions

The plaintiff asks the court to determine whether the defendants should be sanctioned under Federal Rule of Civil Procedure 11 and Alabama Rule of Professional Conduct 3.3 for "providing documents to the court that have been tampered with and are false and misleading in order to deny plaintiff health care and her claims under the pending *Bivens* claim." (Doc. 72 at 1). She contends the defendants falsified her medical records because (1) they contain references to events that did not occur and misdescribe the responsibilities of the various parties and (2) some are incomplete. (*Id.* at 2). She also asserts the defendants have removed certain documents that reflect a physician's recommendation of surgery, and she complains the defendants' declarations that they provided adequate medical care lack evidentiary support. (*Id.*). She argues these records reflect that the defendants have violated federal criminal statutes, including 18 U.S.C. §§ 1001, 1035, 1347, and 1505. (*Id.*).

16

In response, the defendants explain the BOP uses a centralized medical record system that prevents records from being deleted or altered once created. (Doc. 79 at 2). Defense counsel obtained these records directly from the BOP's Office of General Counsel, and the only change made prior to submitting these records to the court was to add Bates stamps to the bottom right corner of each page. (*Id.* at 3). The defendants were not involved in collecting the plaintiff's medical records or submitting them to the court and therefore had no opportunity to alter the records received by defense counsel. (*Id.* at 4). They further argue Rule 11 applies to attorneys, not parties, and while a court may sanction a party who has acted in bad faith, the plaintiff's motion does not meet that high standard because she has offered only speculation, rather than evidence, about the defendants' conduct. (*Id.* at 4-5). They also contend the plaintiff's complaints about the defendants' declarations are nothing more than a factual dispute regarding the merits of her claim. (*Id.*).

Federal Rule of Civil Procedure 11 provides in relevant part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument

for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Alabama Rule of Professional Conduct 3.3 provides

(a) A lawyer shall not knowingly:

(1) Make a false statement of material fact or law to a tribunal;

(2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; or

(3) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding other than a grand jury proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

By its text, Federal Rule of Civil Procedure 11 applies only to attorneys or

unrepresented parties. Similarly, Alabama Rule of Professional Conduct 3.3 applies

only to attorneys. Therefore, neither rule applies to the defendants, who are represented by counsel. Further, the plaintiff's motion does not suggest that defense counsel has acted improperly in submitting the medical records to the court. In any event, a party cannot use Rule 11 to test the legal sufficiency or efficacy of allegations in the pleadings because other motions are available for that purpose and "[s]uch an undertaking would improperly convert a dispute over the factual allegations and legal arguments in a pleading into a sanctions dispute." *Taylor v. Wormuth*, No. 5:22-cv-01350-HNJ, 2023 WL 12144184, at *2 (N.D. Ala. Sept. 7, 2023) (alterations adopted, internal citations and quotations omitted).

Courts have the inherent power to sanction conduct which abuses the judicial process, including the power to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* This power, however, is "unlocked" only upon a finding of bad faith. *Id.*

The court agrees with the defendants that the plaintiff has failed to establish the defendants have acted in bad faith. While she speculates that some of her medical records are missing for a nefarious reason, she has not provided to the court the supposed complete records to show what documents are missing. Nor has she provided any evidence the defendants had any responsibility for the condition of the records submitted to the court. Further, her arguments regarding the contents of the defendants' declarations are simply a factual dispute and therefore inappropriate to

19

resolve in the context of a motion for sanctions. Because there is no evidence the defendants have acted in bad faith, the court has no basis on which to impose sanctions.

Finally, while the plaintiff cites federal criminal statutes she believes the defendants have violated, she cites no legal authority permitting this court to enforce federal criminal law through sanctions in a civil proceeding. Accordingly, her motion for sanctions will be denied.

## VI.    Conclusion

For the reasons set forth above, the defendants' motion for judgment on the pleadings is **GRANTED**. (Doc. 67). The plaintiff's motion to amend her complaint, motion to transfer her claim to state court, and motion for sanctions are **DENIED**. (Docs. 70, 71, 72).

**DONE** this 16th day of June, 2026.


_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE